W. Cumback, S. A. Bonner, J. Gavin, and J. D. Miller, for appellee.

————————⚬————————

THE INDIANAPOLIS, CINCINNATI, AND LAFAYETTE RAILROAD
COMPANY v. WARNER.

RAILROAD.—Action Against two Companies for Stock Killed.—Where a complaint against two railroad corporations charged, that "the defendants by their

locomotives and cars then by them run upon their road, at said county and State, run over and upon one colt belonging to the plaintiff," &c.;

*Held*, that regarding the action as in the nature of a tort, it was sufficient to charge that the act was done by the defendants, without showing what relation they sustained to each other, and a recovery might be had against the one shown by the evidence to be liable; or that there might under the statute be a joint or several liability of the defendants as lessees, assignees, receivers, or as running or controlling a railroad.

SAME.—*Track Along Street.*—Where a railroad company has not the exclusive right of way, as where a railroad runs along, instead of across, a street or alley, and where others as well as the company have the right to pass in or along such street or alley, the company under such circumstances cannot legally construct fences or cattle-guards on or along its track, and is only liable for killing stock at such point on its track when guilty of negligence.

APPEAL from the Morgan Circuit Court.

DOWNEY, C. J.—This was a suit commenced before a justice of the peace by the appellee against the appellant and the Indianapolis and Vincennes Railroad Company, to recover the value of a colt alleged to have been killed by their locomotive and cars, then and there run upon their railroad, at said county and State, where the road was not fenced. There was judgment for the plaintiff before the justice of the peace, to be levied and made without relief from valuation laws. The defendants appealed to the circuit court, where they demurred to the complaint, which was then amended by the plaintiff. The demurrer was then refiled by the defendants to the complaint, assigning for cause that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled, and there was then a trial by the court, and finding for the Indianapolis and Vincennes Railroad Company, and against the Indianapolis, Cincinnati, and Lafayette Railroad Company. The latter company made a motion for a new trial, assigning as reasons the "permitting the plaintiff, after he had submitted the cause, to open the same and introduce new evidence," and also that the finding of the court was not sustained by the evidence, and was contrary to law. This motion was overruled, and judgment rendered on the finding against the Indianapolis,

Cincinnati, and Lafayette Railroad Company, and in favor of the Indianapolis and Vincennes Railroad Company.

The objection to the complaint, urged in the brief of counsel for the appellant, is that it does not show "any consolidation of the two companies, that one is the lessee of the other, or anything to inform them, or either of them, of a joint or several liability to the plaintiff, except the allegation "their locomotive," "their railroad."

The complaint, as amended, states that " the plaintiff complains of the defendants, and says that on the — day of August, 1868, the said defendants, by their locomotive and cars, then by them run upon their road, at said county and State, run over and upon one colt belonging to the said plaintiff, and of the value of fifty dollars, and by so running over the same killed it. That at the time the same was so run over, the said road was not securely, or in any way, fenced in, at the point where said colt entered upon said road, and that the same was killed without the fault of plaintiff; to the damage of the plaintiff in the sum of fifty dollars, for which he prays judgment."

Regarding the cause of action as a tort, or in the nature of a tort, we think that it was sufficient to charge that the act was done by the defendants, without showing what relation they sustained to each other. The plaintiff may, in tort, sue all or any of the *tort-feasors*, and may recover against such as may be shown by the evidence to be liable. *Palmer* v. *Crosby*, 1 Blackf. 139. And it is provided by statute, " that lessees, assignees, receivers, and other persons running or controlling any railroad in the corporate name of such company, shall be liable, jointly or severally, with such company, for stock killed or injured by the locomotives, cars, or other carriages of such company, to the extent, and according to the provisions of this act." 3 Ind. Stat. 413.

The complaint, in this case, charges that the act was done by both corporations. How they were related to each other is matter which it may be important to show on the trial,

in order to make out the case. If it should turn out in evidence, for illustration, that the Indianapolis, Cincinnati, and Lafayette Railroad Company had leased, and was using the road of the Indianapolis and Vincennes Company, at the time and place, when and where the animal was killed, this would render both companies liable, under the section of the statute quoted.

The next question is as to the correctness of the ruling of the court in allowing the plaintiff to introduce new and additional evidence after the argument had commenced. We know it is somewhat annoying to the counsel, when they have, in argument, as was probably the case here, pointed out to the court wherein the evidence is insufficient, to have the court permit their adversary to avoid the consequences of such omission by allowing additional evidence; and perhaps it should not be allowed, except in case of surprise or excusable omission. But it is so far a matter in the discretion of the subordinate court, that this court has not, in any case, interfered. *Coats* v. *Gregory,* 10 Ind. 345; *Watt* v. *Alvord,* 25 Ind. 533.

The next question is as to the sufficiency of the evidence to support the verdict.

It appears from the evidence that at the southern boundary of the town of Martinsville, and constituting such boundary, there was an alley running east and west; that Main street and Jefferson street, running parallel, north and south, with only one tier of blocks between them, terminated, at their southern end, at this alley; that when the railroad in question was being constructed, Mitchell furnished a part of the land necessary by setting back his fence from the south side of the alley, making altogether a space of about thirty feet, including the alley; that the railroad was located and made near the center of this space, in part on the alley, and in part on the land given by Mitchell; that there was a fence along each side of this space, between Main street and Jefferson street, Mitchell owning the land on the south, and Taylor on the north, and each maintaining the fence on his

own side. Jefferson street terminated at the alley, but Main street continued on south of the alley and the railroad. The animal in question, and some others, were standing between the railroad and Mitchell's fence, near Main street, when the train approached from the west. Some of them ran down the continuation of Main street, south, while the others, including the colt which was killed, ran east; and the colt was soon afterwards found dead, at or near the southern termination of Jefferson street. There were no cattle-guards at the crossing of Main street, nor anything else to prevent animals from going upon the railroad from Main street to the point where the colt was killed. There is no evidence as to whether there were or were not, cattle guards at Jefferson street.

The material question is whether the railroad company was bound to have any other fence along its railroad, between Main street and Jefferson street, than was there, and whether they were required to have cattle-guards at Main street. In other words, were they bound to fence in their road at that point, or be liable for animals killed, without proof of negligence?

Counsel for the appellee insist, that in towns and cities, railroad companies are bound to fence their roads with the same care as without their limits, that the exception only extends to places where it is unreasonable or improper that the road should be fenced, whether within or without the corporate limits of towns and cities. This position may be correct as to those railroads which own, exclusively, the right of way in a town or city, in which they run, or through which they pass. In such a case it would, it seems to us, be possible for the company to fence in their road by making the required fences along the sides thereof, and the necessary cattle-guards to prevent cattle from going from the streets or alleys across which the road passes, upon the track of the railroad. But this case is not one of this character. There are cases where the railroad company has not the exclusive right of way, as where the road runs along, instead

of running across the street or alley, and where others, as well as such company, have the right to pass on and along such street or alley. In such cases it seems to us that the company is not required to, and cannot legally construct fences or make cattle-guards on or along its track. In the case under consideration, the railroad ran partly on the alley and partly on the land given by Mitchell to the company. We must presume that the alley was one on which the public had a right to travel, and which they had a right to use as well as the railroad company. The company could not erect a fence along the north side of the railroad without placing the same in the alley, and thus unlawfully obstructing the same. Nor could the company, for the same reason, construct cattle-guards across the railroad track, at the east edge of Main street, and run a fence from such cattle-guards to the fence of Taylor, on the line of the east edge of Main street, without unlawfully obstructing such alley. But it may be said that the animal in question having been on the south side of the railroad, and on the land given to the company by Mitchell, outside of the town limits, the company might have fenced there, and that it might have placed cattle-guards and a fence south of the railroad to Mitchell's fence, on the line of the east edge of Main street. But these would not inclose the road. They, united to Mitchell's fence, would only make a fence on the south side of the road, and produce danger instead of safety, while the north side would be entirely open.

We are not inclined to hold that the company was bound to make a fence on the south side of the road nearer to it than the fence of Mitchell. This fence was only twelve or fourteen feet from the railroad track, which would probably leave little enough space for convenience in operating and repairing the road. See *The Indianapolis, Pittsburgh and Cleveland Railroad Co.* v. *Irish*, 26 Ind. 268. Under the circumstances disclosed in this case, we do not see how the road, at the point in question, could legally have been

"fenced in, and such fence properly maintained by such company," &c., as contemplated by the statute.

There is some discrepancy in the evidence as to whether Mitchell's fence was standing, at the point designated, at the time the animal was killed or not. We incline to the opinion that it was; but it would not change our view if the fence was not then standing at that point.

The appellant contends that because the judgment before the justice of the peace was rendered without relief from valuation laws, and was, in this respect, unauthorized, the plaintiff was liable for costs from the time of filing the appeal bond, and a motion for judgment to this effect was made and overruled, to which the defendant excepted, and this is assigned for error. Counsel for the appellant have failed to satisfy us that this was erroneous. No authority for such an order has been furnished to us, and we do not recall any such authority.

The judgment is reversed, with costs, and the cause remanded.

*S. P. Oyler* and *D. W. Howe.* for appellant.

*C. F. McNutt* and *G. W. Grubbs,* for appellee.