## EUREKA HILL MINING CO. v. BULLION BECK & CHAMPION MINING CO.

No. 1768. Decided May 7, 1907 (90 Pac. 157).

1. APPEAL—FINDINGS—SUFFICIENCY OF EVIDENCE. Findings of fact of referee on conflicting evidence are conclusive on appeal notwithstanding inconsistencies in the testimony of the witnesses of one party; this going only to the weight of evidence and credibility of the witnesses.

2. WITNESSES—IMPEACHMENT—EVIDENCE. Time books from which pay rolls were made up, together with the pay rolls, showing the number of days each employee worked in a given month, are admissible as bearing on the question of the accuracy of the recollection and statements by the employees who testified, and who had signed the pay rolls, as to the number of days and months they were at work; but memoranda in the books of the pay rolls to indicate the capacity and place in which the witnesses worked are inadmissible, except where the attention of the witnesses is directed thereto and opportunity given them to explain or deny the same.

3. EVIDENCE—BOOKS. Books kept by a private corporation solely for its own purposes and in the administration of its own affairs to indicate progress of work are incompetent as evidence of isolated and collateral facts in a suit between the corporation and a stranger.

Appeal from District Court, Juab County; Joshua Greenwood, Judge.

Action by the Eureka Hill Mining Company against the Bullion Beck & Champion Mining Company. Judgment for plaintiff. Defendant appeals.

Affirmed.

*Dickson, Ellis, Ellis & Schoulder* for appellant.

*Sutherland, Van Cott, Allison, Riter & Harkness* for respondent.

## APPELLANT'S POINTS.

In order to entitle one to treble damages under the statute, it must be made to appear that the trespass was malicious, willful, wanton or the result of such gross recklessness and negligence on the part of the defendant as would be equivalent to willfulness or wantonness. (*Barnes v. Jones,* 51 Cal. 303; *Stewart v. Sexton,* 108 Cal. 197; *Cohn v. Neeves,* 40 Wis. 393; *McDonald v. Wood Co.,* 43 Am. St. 616; *Railroad v. Scurr,* 42 Am. Rep. 377; *Dorsey v. Manlove,* 14 Cal. 536; *Yerian v. Linkletter,* 80 Cal. 135; *Pickett v. Crook,* 20 Wis. 377.)

Unless the acts constituting the injury were directed by the corporation, or subsequently ratified by it, exemplary damages cannot be given." (*Warner v. Southern Pacific Co.,* 113 Cal. 105; *Cleghorn v. Railroad,* 56 N. Y. 44; *Railroad v. Garcian,* 70 Tex. 207; *Railroad v. Johnson,* 75 Tex. 158; *Page v. Yaol,* 56 Pac. 636; *Trabing v. Navigation & Improvement Co.,* 121 Cal. 137; *Hagan v. Railroad,* 3 R. I. 88; *Railroad v. Telephone Co.,* 69 Tex. 278; *Railroad v. Prentiss,* 147 U. S. 101.)

If plaintiff call upon defendant to produce a book or document at the trial, and it is produced and submitted for inspection, the defendant is entitled to introduce it in evidence if plaintiff does not. (*Ellison v. Cruser,* 40 N. Y. Law 444; 2 Taylor on Evidence, section 1817, p. 1545;

*Broom Co. v. Lambson,* 33 Am. Dec. 656-662; *Electric Light Co. v. Electric Lighting Co.,* 45 Fed. 55; *Heaffer v. Insurance Co.,* 101 Pa. St. 178; *Bake v. Russ,* 33 Me. 360; *Wooten v. Nail,* 18 Ga. 609; *Blizzard v. Nosworthy,* 50 Ga. 514; *Clark v. Fletcher,* 1 Allen 53; *Long v. Drew,* 114 Mass. 77; *Wilkins v. Gillespie,* 7 S. & R. 10; 2 Ency. of Evidence, 683.)

"A class of entries made by deceased third parties, which are received in evidence, are those made in the ordinary course of business, or duty, immediately connected with the transaction of the business, or duty, to which they relate, and contemporaneously, or nearly so, with such transaction, by a person having a peculiar knowledge of the facts entered and having no interest at the time to pervert or misstate them." (86 S. W. 38; *State v. Brady,* 36 L. R. An. 693; *Curtis v. Bradley,* 78 L. R. A. 163; *Am. Surety Co. v. Pauly,* 72 Fed. 478, 170 U. S. 133-159; 2 Ency. of Evidence, 672, and notes; *Durby v. Salem,* 30 Vt. 722; *Leland v. Cameron,* 31 N. Y. 115-121; *Guy v. Mead,* 22 N. Y. 462; *Halsey v. Sinsebaugh,* 15 N. Y. 485; *Wernell v. Railroad,* 16 Wend. 586; *Insurance Co. v. Weide,* 9 Wall. 677; *Sill v. Reese,* 47 Cal. 294-341; *Heiskeel v. Rollins,* 33 Atl. 263.)

When error has been committed by the lower court it is ground for reversal, unless it appears beyond question that it worked no injury. The case must be such that the appellant court is not called upon to decide upon the preponderance of the evidence that the verdict was right notwithstanding the error complained of. (*Smith v. Shoemaker,* 17 Wall. 630-639; *Gilmer v. Higley,* 110 U. S. 47; *Moxia v. Oliver,* 148 U. S. 664-673; *Railroad v. O'Reilly,* 158 U. S. 334; *Railroad v. Halloway,* 114 Fed. 458-465; *U. S. v. Gentry,* 119 Fed. 70-75.)

### RESPONDENT'S POINTS.

The referee did not err in excluding from evidence the memoranda upon the pay rolls or the letters and memoranda appearing on the time books indicating the capacity in which

and the places where the employees worked, nor did he err in excluding from the evidence the so-called "field books" of the defendant company. (*Austin v. Thompson,* 45 N. H. 113; *Price v. Garland,* 6 Pac. 472-477; *Treadwell v. Lennig,* 50 Fed. 872; *Blight v. Ashley,* Fed. Cases, No. 1541; *Willings v. Consequa,* Fed. Cases, No. 17767; *Smith v. Coleman,* Fed. Cases, No. 13029; 2 Phillips on Evidence, 537; *Smith v. Rentz,* 131 N. Y. 169; *Taylor v. Railroad Co.* [Iowa], 46 N. W. 64; *Hoffman v. Railroad,* 41 N. W. 301; *Railroad v. Cunnington,* 39 Ohio St. 327; *Minton v. Lumber Co.,* 79 Wis. 646; *Brickley v. Walker,* 68 Wis. 563, 569; *Railroad v. Tripp,* 51 N. E. 833; *Railroad v. Moras,* 111 Ill. App. 531-4; *Treat v. Barber,* 7 Conn. 274, 278; *Watts v. Shewell,* 31 O. St. 331; *Cairnes v. Hunt,* 78 Ill. App. 420; *Holt v. Pie,* 14 Atl. 389.)

McCARTY, C. J.

This is an action of trespass brought by plaintiff against defendant to recover the value of certain ores claimed to have been unlawfully extracted by the defendant from the property of the plaintiff situate in Tintic mining district, Juab county, this state. The case was referred to C. S. Varian, a member of the bar of this court, as referee to take testimony and to make and file findings of fact and conclusions of law. As stated by the referee in his review of the case in a written opinion which he filed in connection with the findings of fact and conclusions of law: "It appears from the *evidence that in the year 1888 there were suits pending* between plaintiff and defendant and another company, the Bullion Beck & California Company, to whose right the defendant company has now succeeded, respecting the boundaries of the respective claims and the lode or lodes therein, and during the pendency of such suits a provisional line of separation was established by the court or agreed upon by the parties. In February, 1888, it appears that the defendant had worked across this line some eight or ten feet at the west end of the stope now designated in the evidence as the 'Trespass stope,' and extracted some ore; that a survey was

made on February 24, 1888, by Mr. Brooks, defendant's engineer, for the purpose of establishing the line at that point and the location of the 'Day stope,' with relation thereto, this being a large stope in defendant's ground immediately adjoining the line on the west, and thereupon the place was bulkheaded. On July 2, 1888, an agreement in writing was made by and between all of the parties, whereby the provisional or court boundary line was affirmed and established, . . . By this agreement the parties reciprocally released to each other all claims for damages on account of trespass theretofore committed. . . . Plaintiff contends that in the year 1896 the defendant returned to this trespass stope (which, as stated, is in plaintiff's ground) and entered it about the same place as in 1888, stoped out substantially all the ore and converted the same to its own use. . . . That plaintiff had no knowledge of the trespass until January, 1903, when its servants, in following ore in plaintiff's ground, broke into the stope at its easterly end and made the discovery." The referee, among other things, found: "(7) That in the year 1896 the defendant wrongfully and unlawfully, by means of underground openings, winzes, levels, and raises, at great depth beneath the surface, entered into and upon that part of the lode or lodes lying across easterly and southerly of the vertical plane of said boundary line aforesaid and owned by and in possession of the plaintiff, and secretly, intentionally, and fraudulently, by underground excavations and openings, mined, extracted, removed, and converted to its own use large quantities of mineral bearing ores from the property of the plaintiff, to wit, 148 tons of the value of $114 per ton, and of the aggregate value of $16,872. That said ore was mined and extracted from a certain stope called the 'Trespass stope.' . . . (10) That said trespass being intentional, willful and fraudulent, the plaintiff is entitled to have the value of the ores so taken and converted trebled, and the aggregate damages amount to $50,-610." Judgment was rendered in favor of plaintiff and against defendant in accordance with the foregoing findings

for the sum of $50,610. To reverse this judgment defendant has appealed to this court.

Appellant insists that the findings are not only unsupported by, but are contrary to, the evidence. The record contains about one-thousand pages of testimony, besides numerous time books and pay rolls of appellant, and also several maps showing the agreed boundary line hereinbefore referred to between the respective companies (plaintiff and defendant), as well as extensive underground workings at and in the vicinity of the stope wherein it is claimed the alleged trespass was committed. We deem it unnecessary to here review in detail this voluminous record, as a brief reference to the testimony of some of the principal witnesses is all that is necessary to support the findings assigned as error.

John Group, one of plaintiff's witnesses, testified, in substance, that in the year 1888 he worked for defendant company; that he worked across the boundary line mentioned and into the Trespass stope, taking out ore for a distance of seven or eight feet; that, when it was discovered he was working in and extracting ore from plaintiff's ground, he was ordered by defendant's foreman to stop working at that place and to bulkhead the entrance to the stope, which he did; that in 1889 he left defendant's employment and returned to work again in 1893; that in the year 1896 he and one Nelson, another employee of defendant company, removed, by order of defendant's foreman, the bulkhead from the Trespass stope, which he (Group) had placed there in 1888; that when this bulkhead was removed Jared Roundy was foreman and John A. Kirby was superintendent of defendant company. Nelson was called as a witnesss by plaintiff and corroborated the testimony of Group in relation to the removal of the bulkhead from the entrance of the Trespass stope, and further testified, in part, as follows: "While I was working there [referring to the Trespass stope] the men were breaking ore in the stope, Hanson and Thompson. While that six weeks' work was going on in this stope, I saw Roundy up there. He used to come every

32 Utah—16

day. I saw Kirby in that stope. He was up the first day when we struck the ore. That afternoon he came up with Roundy. The same day we took the bulkhead down. I saw him there two or three times after that in the stope. During that six weeks I was timbering most of the time. Sometimes I would go up in the stope." George Hanson, another of plaintiff's witnesses, testified that: "I worked for the Bullion Beck Mining Company in 1896. Kirby was then superintendent and Jared Roundy foreman. I first saw Trespass stope in 1896. . . . I and Joe Thompson were taken up there by Roundy, the foreman. When we got into the Trespass stope, we found ore there—lead and galena and silver ore. We started to break ore and continued to work there six or seven weeks, breaking ore through the whole of that six or seven weeks. There was no waste. It was all ore. . . . Kirby was up there while we were at work in this stope several times. . . . Roundy was up there nearly every day while we were at work." Plaintiff called other witnesses, who testified to substantially the same facts as those mentioned. In fact, much evidence not herein referred to was introduced by plaintiff company which tended to show that defendant committed the trespass alleged in the complaint. To meet and overcome the evidence produced by the plaintiff the defendant called Mr. Kirby, its superintendent, and Mr. Roundy, its foreman, as witnesses, and each of them denied that he had anything to do with the working of the Trespass stope, or had any knowledge of when, or by whom, the stope in question had been worked and the ores extracted therefrom. In fact, their testimony is, in effect, a flat contradiction of that given by the witnesses for the plaintiff company on this point. It will thus be seen that there is a substantial conflict in the evidence on the issues involving the merits of the case. This court, in a long line of decisions, has uniformly held that, when there is any substantial evidence to support the findings of the trial court, such findings will not be disturbed.

Counsel for appellant have devoted much space in their briefs in pointing out, and in the discussion of, what they

claim to be inconsistencies in the testimony of the plaintiff's witnesses; but, as this is an action at law, this court is precluded from examining into or in any way considering those matters, as they only go to the weight of the evidence and credibility of the witnesses. The referee, whose province it was to pass upon the credibility of the witnesses in weighing the evidence, evidently gave these questions due consideration, for, in the course of his written opinion filed in the case, he says: "It is argued by defendant's counsel that the disagreements and inconsistencies appearing here and there in the testimony of plaintiff's witnesses indicate a lack of candor and truthfulness which render them unworthy of belief. . . . As to the testimony given by the witnesses in the case, it is my duty, if I can do so, to reconcile all of it along the lines of truthfulness and honesty, and I must also do this with the evidence given by the plaintiff's witnesses, if I can. All of them but Kell were produced at the trial, and I had an opportunity of judging, from their manner on the stand and appearances generally while giving evidence, of their character. My impression was, and is, that each of them was endeavoring to state the truth as he remembered it; and it is not suprising that, after such a lapse of time, the memories of the witnesses should be at fault as to times and nonessential circumstances. They differ among themselves as to some matters; but I think the testimony, as a whole, can be easily reconciled as consistent and harmonious on all substantial matters." After a careful and thorough examination of the record, we are of the opinion, and so hold, that there is ample evidence to support the finding that the defendant company committed the trespass charged in the complaint, and that trespass was intentional and fraudulent. In fact, the physical conditions in and about the Trespass stope, as shown by the several maps in evidence, and by the testimony of the witnesses, including that given by several competent and experienced civil engineers who surveyed the underground workings and prepared the maps referred to, demonstrate beyond the possibility of a doubt that, if the defendant committed the trespass at all, it did so intentionally.

While there is some conflict in the evidence regarding the value and quantity of the ore extracted by defendant from the Trespass stope, we think it is sufficient to uphold the finding of the referee on this point.

The next assignment of error refers to the exclusion of evidence, by the referee, relating to certain "field books," and certain memoranda appearing on the pay rolls and time books of appellant. The referee has so completely and logically covered and discussed the questions arising under this assignment of error in his written opinion filed in the case, we hereby adopt that part of his opinion wherein he says: "These books contain the names of the men which were usually written in by the timekeeper, and the books ruled in lines, vertical and horizontal, which, crossing each other, form spaces in columns under the several days of the month printed at the top, in which spaces the shift bosses checked each man's time for each day by writing therein in pencil the figure '1' or a fraction, as the case might be. They also contain frequent memoranda, such as initial capital letters, also in pencil, said to indicate the capacity in which the men worked, 'M' meaning miner, 'T' timbermen, 'B' Burleigh, for Burleigh drill, etc. These letters are supposed to be written by the shift bosses, and I believe in some instances Franke and Temby identified some of these letters as being in their handwriting (I think, also, some evidence was given of Brand's handwriting) in identification of some of these letters appearing in his books. It is apparent, however, on the face of these books, that some of the letters are not in the handwriting of the shift bosses. It was shown that it was the duty of the shift bosses to keep the time correctly, and Franke and Temby testified that they tried to do so, and believed they had kept their books correctly. All of these time books together furnished the data, the original data, for the making up of the pay rolls for the men underground. The witnesses for the plaintiff who testified to the work in the Trespass stope identified their signatures to the pay rolls, which showed the number of, but not the particular, days each worked in a given month. I think these pay rolls are admissible as bearing upon the ques-

tion of the accuracy of the recollection and statements by the several witnesses who signed them as to the number of days and months they were at work. The memoranda upon the pay rolls as to the capacity in which the several men worked is not original evidence, and I exclude all such except in the individual instances where the attention of the witnesses was directed to such memoranda and opportunity afforded them to explain or deny the same. (*Healy v. Wellesley, etc., Ry. Co.,* 176 Mass. 440, 57 N. E. 703.) As to the time books themselves, there is apparently a conflict ,of authority as to their admissibility, and I have serious doubts upon the question. I have concluded, however, to overrule the objection to these books, and also that to the timekeeper's books, letting the two sets of time books go in evidence, together with the pay rolls; but I exclude from the evidence all letters or memoranda appearing in these books by way of indication of the capacity in which or the places where the men worked. The field books are in a different situation, however. They came to the shift bosses from the timekeeper, who prepared them for use by writing in the lefthand column of each page the figures and words indicating the levels, stopes, drifts, and other places in which work was done each day and night by the two shifts, and by writing at the top of the page, at the head of column prepared, certain words such as 'Miners on Ore,' 'Miners on Dead Work,' 'Laborers,' 'Cars of Ore,' 'Powder,' 'Fuse,' 'Caps,' etc., indicating the places where men worked, the number working, the character of the work, and the consumption of supplies, etc. The shift bosses were supposed to fill in these columns with figures indicating the progress of the work in the mine and the consumption of material each day. These books were not correctly kept, and, as said by Mr. Hume, were not supposed to be accurate, and otherwise did not appear to be competent as evidence against the plaintiff. They were kept by a private corporation, solely for its own purposes and in the administration of its internal affairs, and I do not think, under any rule of evidence, they can be competent as witnesses to isolated and collateral facts in a suit between the corporation and a stranger."

The judgment of the court below is affirmed, with costs.

STRAUP and FRICK, JJ., concur.