W. B. GREEN, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, February 7, 1910.

1. **RAILROADS: Killing Animals: Duty to Fence: Necessary Switch Yards: Question for Jury.** Where stock is killed by a train within the switch limits, but not immediately adjacent to a station, what are necessary station grounds and switchyards is frequently a question of fact for the jury, and not a question of law for the court. It is only where the extent of the switchyards is so reasonable, or from other peculiar circumstances of the case, that but one conclusion can be drawn from the evidence that the question becomes one of law for the court.

2. ———: ———: ———: ———: ———. Plaintiff's horse was killed at a point a thousand feet east of the depot, seventy-five feet west of the cattle-guard and five hundred feet of the head of the switch. There was an extensive switchyard southwest of the depot. The town was small and the tracks were used mostly for passing tracks and through business. *Held*, that the question of whether the railroad should have fenced at the point where the horse was killed was for the jury.

3. ———: ———: ———: ———: **Test by Amount of Business Done With Public at Station.** The exception to the statute requiring railroad companies to fence their tracks is one of necessity and has been engrafted thereon by courts, and extends only to such switch grounds at a station which are needed for the public's and the company's business connected with the station, and not belonging to the general operation

of the road, such as the passing of trains, storing and billing out of cars, turning in and taking out of waybills of through cars, inspecting through trains, giving and taking running orders on through trains and the like.

4. **EVIDENCE: Opinions of Non-Expert Witnesses: Facts Within Witnesses' Observation.** If all the facts upon which the opinion or judgment of the witness are based are within the knowledge of the witness, and such facts are given to the jury, the witness' explanations thereof or conclusion therefrom are not properly expert testimony and their admission or rejection is harmless.

5. ———: ———: ———: ———: **Operation of Railroads.** Where the question in issue was whether the railroad company had more space between a switch point and a cattle-guard than was necessary for switching, it was not error to permit a non-expert witness to testify from his observation how much space was required for switching cars to the side track. Such evidence is not mere opinion, but matters and facts within the observation of the witness.

6. ———: ———: **When Expert Testimony is Inadmissible.** If the jury, although presumably devoid at the beginning of the trial of experience concerning a subject-matter, can be so informed during its progress as to reach an accurate conclusion, the subject is not one for inference, conclusion or judgment, and the evidence may be excluded in the discretion of the court. In such case, it is proper to exclude expert testimony.

7. ———: **Expert Testimony: Custom: Operation of Railroads.** It was error to permit an expert witness of a railroad company to testify that it was usual and customary for railroads to leave as much as a train's length between the switch point and the cattle-guard. A negligent act might thus be made lawful because usual and customary.

8. ———: **Demurrer: Defendant's Uncontradicted Evidence: Question for Jury.** A demurrer cannot be predicated on incompetent evidence on behalf of the defendant, because uncontradicted, especially where it is oral and is the opinion of experts. The truth of such evidence was for the jury, and the court could not direct a verdict on account thereof.

9. **RAILROADS: Killing Animals: Failure to Fence: Presumption as to Where Animals Entered on Track.** In an action against a railroad company for killing animals, grounded on a failure to fence, the place where the animal was killed, in the absence of evidence to the contrary, is presumed to have been the place of entry.

Appeal from Jasper Circuit Court,—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Cyrus Crane, O. L. Cravens* and *J. W. McAntire* for appellant.

(1) The undisputed evidence showed that the horse came upon the track at a point where a cattle-guard and fence could not have been maintained with safety to the trainmen in the discharge of their duties, and the demurrer should have been sustained. Edie v. Railroad, 133 Mo. App. 9; Gilpin v. Railroad, 77 S. W. 118, 197 Mo. 319; Bridges v. Railroad, 132 Mo. App. 576; Hurd v. Chappel, 91 Mo. App. 317; Grant v. Railroad, 56 Mo. App. 65; Pearson v. Railroad, 33 Mo. App. 543; Jennings v. Railroad, 37 Mo. App. 651; Webster v. Railroad, 57 Mo. App. 451; Crenshaw v. Railroad, 54 Mo. App. 233. (2) The court should not have allowed the non-expert witnesses for plaintiff to have testified as to the amount of space required for switching cars to the side track. Gourley v. Railroad, 35 Mo. App. 87; Graney v. Railroad, 157 Mo. 666; Farber v. Railroad, 116 Mo. 81; Guffey v. Railroad, 53 Mo. App. 462; Johnson v. Kahn, 97 Mo. App. 628; Muller v. Gillick, 66 Mo. App. 500; Livery Co. v. Railroad, 105 Mo. App. 556; Mammerberg v. Railroad, 62 Mo. App. 563; Senn v. Railroad, 108 Mo. 142; Turner v. Haar, 114 Mo. 335; Impkamp v. Transit Co., 108 Mo. App. 665. (3) The court erred in excluding the questions asked by defendant of its expert witnesses, Downen and Bush. Robinson v. Railroad, 21 Mo. App. 141; Johnson v. Railroad (Mich.), 97 N. W. 760; Culver v. Railroad, 108 Ala. 330, 18 So. 827.

*John T. Sturgis* for respondent.

(1) The exception to the statute requiring railroads to fence their tracks, which has been grafted

thereon by the courts, extends only to such switch grounds at a station as is needed for the public's and the company's business ~connected with the station. Bridges v. Railroad, 132 Mo. App. 536; Vanderworker v. Railroad, 51 Mo. App. 166; Russell v. Railroad, 26 Mo. App. 368; Chouteau v. Railroad, 28 Mo. App. 556; Smith v. Railroad, 111 Mo. App. 410; Duncan v. Railroad, 111 Mo. App. 193. (2) "What are necessary station grounds, where stock is not killed immediately adjacent to a station, is a question of fact for a jury and not a question of law for the court. It is only where but one conclusion can be drawn from the evidence that it is a question for the court." Acord v. Railroad, 113 Mo. App. 84; Downey v. Railroad, 94 Mo. App. 137; Brandenburg v. Railroad, 44 Mo. App. 224; Riley v. Railroad, 89 Mo. App. 375; Prather v. Railroad, 84 Mo. App. 86; Ellis v. Railroad, 89 Mo. App. 241. (3) The evidence offered by defendant and admitted by the court that it was "usual and customary" for railroads to leave as much as a train length between the switch point and the cattle-guard, was clearly not admissible. A negligent act might thus be made lawful because "usual and customary." Daugherty v. Transit Co., 128 Mo. 37; Barth v. Railroad, 142 Mo. 555; Joyce v. Railroad (Mo.), 118 S. W. 21. (4) Where a defense is based on oral evidence, its truth is for the jury and the court cannot direct a verdict, and especially so when such evidence is the opinion of experts. Ellis v. Railroad, 89 Mo. App. 241; Gannon v. Gas Co., 145 Mo. 502; Leehorn v. Bank, 148 Mo. 256; Harris v. Box Co., 87 Mo. App. 438; Hull v. St. Louis, 138 Mo. 618; Smith v. Telephone Co., 113 Mo. App. 429; Pritchard v. Hooker, 114 Mo. App. 605; Western Union Tel. Co. v. Guernsey, 46 Mo. App. 120; Investment Co. v. St. Joseph, 191 Mo. 459. (5) Where questions, even if objectionable in form, are understood and answered by a witness as calling for matters and facts within his observation, and do not elicit mere opinions independent of the observed facts,

the evidence is not error. 17 Cyc., 60; Owen v. Railroad, 109 Mo. App. 608; Joyce v. Railroad (Mo.), 118 S. W. 21; Hoffman v. Railroad, 51 Mo. App. 273. (6) "It is not permissible to prove by the opinion of experts whether or not it would be dangerous to maintain a cattle-guard at a particular place, as the jury is able to draw a correct conclusion on such a question from the facts." 12 Ency. Law (2 Ed.), 468; Railroad v. Modisett, 124 Ind. 212, 24 N. E. 968; Railroad v. DeBolt, 10 Ind. App. 174, 37 N. E. 737; 17 Cyc., 41; Lee v. Knapp & Co., 155 Mo. 610; Koenig v. Union Depot Co., 173 Mo. 698; Chouteau v. Railroad, 28 Mo. App. 556.

STATEMENT.—The respondent sued for, and, on a trial before a jury, obtained judgment for double damages for an injury to his horse struck by appellant's train at an unfenced portion of its track near the station of Goodman, under section 1105 of the Revised Statutes of 1899. The defense was that such point was within the necessary switch limits of said station and hence no fence was required. The evidence tends to show that the injury was sustained within the switch limits of Goodman, a regular station of appellant's road which was used as a filling out station. This question was submitted to the jury and resolved in respondent's favor, and the question now is whether the facts are such as to warrant its submission, and, if so, whether the instructions submitting it are correct.

The place where the horse was killed was seventy-five feet west of the cattle-guard and some five hundred and two feet east of the head of the switch, the distance from the head of the switch to the cattle-guard being about five hundred and ninety-five feet. The appellant maintained extensive switch yards to the southwest of the depot. What is designated the "splitlog spur" leaves the main line some five hundred feet south of the depot, connects with the depot switch and extends on southwest two thousand five hundred and

seventy-six feet. This is paralled by another switch, called the "storage switch," one thousand four hundred and forty feet long. Then there is another switch —in reality, an extension southwest of the depot switch after it crosses the splitlog spur—five hundred and nine feet long. The depot switch and the splitlog spur make a continuous switch three thousand six hundred and sixty-four feet long; and to this might justly be added the connecting wye, making it four thousand six hundred and eight feet or nearly one mile.

The village of Goodman is all on the southwest side of the railroad and no streets or roads cross it except one just south of the depot. It has from seven to ten families, three stores, a blacksmith shop, hotel and livery stable. North of the town half a mile is where the station used to be, a village known as Wade, with a like population, the combined population of the two villages being about two or three hundred inhabitants. It was shown that some three or four country stores in the surrounding sparsely settled country received more or less freight at Goodman. One man attended to all the business for the railroad, including the duties of telegraph operator. The two daily passenger trains—one each way—stopped there regularly, but the night trains did not stop except when flagged or sometimes to let off passengers.

The splitlog spur with the wye connection is used for a passing track and for turning engines. The two switches parallel to it are used for storing cars. The extreme southwest end of the splitlog spur (one-half mile from the depot) south of the wye connection, is used for shipping timber, ties, and so forth, which is the principal product of that country; and here also are located the fruit sheds of the Ozark Orchard Company where fruit is loaded and shipped in season. Some shipping of timber and ties is also done from the switch just south of the depot. As to the use of the switch opposite and north of the depot towards where the horse was in-

jured, it was used to load and unload local freight at the depot, and was occasionally used by a merchant named Whitehead. Very little freight is shipped into Goodman in carload lots, possibly one car a month. The railroad at this point runs northeast and southwest. It was also shown that the local freight—ten to fifteen cars in length—was the only train, with rare exceptions, that ever passed in or out of the switch northeast of the depot. As the splitlog spur was the passing track and most of the shipping of ties and timber and fruit was from the extreme south end, beyond the wye, the trains passed in either at the switch about five hundred feet south of the depot—sixteen hundred feet from this north cattle-guard—or at the wye connection a half mile farther south. The evidence of respondent's witnesses tended to show that in using the switch northeast of the depot, the trainmen did not ordinarily use over one hundred to one hundred and fifty feet; that is, that the man who alighted from the train to open it or who boarded the train after opening it, never used more than that space beyond the switch head; and hence a cattle-guard beyond that distance would not be crossed by employees in switching and could not be dangerous. This is concurred in by appellant's station agent except he says that a train passing off the switch may keep going so fast as to make the switchman run two hundred feet to catch it.

There was evidence of appellant tending to show that the real defense for leaving the unfenced portion of the road a thousand feet northeast of the depot where the horse was injured, is not on account of the local business, or business necessarily connected with the station, but on account of the through business—that is, business originating at or destined for other points and merely passing through that station. Goodman station is just over the crest of a heavy grade coming from the south, and so was used for what is called a storing or filling out station; that is, many cars—whole trains fre-

quently—going north were stored there to be picked up by other trains going north, for the reason that more cars could be hauled by an engine after it passed the grade. This causes much stopping and switching and billing of cars at this station. In fact appellant's station agent testified that this occasions at least one-half the business of the station, and that except for this storing and filling out process, the through freights—the long trains—would not stop there at all unless to get train orders. There was some evidence tending to show that the through business could be transacted somewhere else than at Goodman, and that it is not business with the public at or in connection with the local station, but that "it belongs to the general operation of the road."

The verdict of the jury was for seventy dollars. The railroad company has perfected its appeal to this court.

NIXON, P. J. (after stating the facts as above).—As will be seen from the foregoing statement, the point where the respondent's horse came upon the appellant's railroad tracks and was killed is about one thousand feet northeast of the depot and about five hundred feet in the same direction from the switch-block or apex of the switch. The horse was killed within the switch limits—that is, between the apex of the switch and the cattle-guard, about fifty or one hundred feet southwest of the cattle-guard. There were long passing and storage tracks in a southwesterly direction from the depot commencing some five hundred feet from it and extending farther on southwest, which were largely used by the company in business in connection with the local station. The appellant's brief concedes its liability for double damages unless the railroad company is excused from fencing the point where the horse was injured on account of its being reasonably necessary for switching and depot grounds, due regard being had to the business

done at Goodman station and the safety of the employees in doing such business. The respondent concedes that both the amount of business done and the safety of the trainmen must be taken into account in determining the amount of road which ought to be used for switch purposes and which may remain unfenced. The case was tried and the instructions given on this theory.

I. The appellant has assigned as error that the trial court should as a matter of law have declared by instructions that the point where the injury took place was within the the necessary and reasonable switch grounds of the appellant, due regard being had for the safety of employees, and that appellant's demurrer to the evidence should have been sustained on this account.

In answer to this contention of the appellant, the respondent argues that in determining this question, the law excludes the through business of the road, such as the mere passing of trains, the storing of cars not used in connection with the station, extra switching, taking train orders, and so forth, occasioned thereby. To maintain the proposition, the appellant asks this court to make the following finding: "That the undisputed evidence showed that the horse came upon the railroad track of the appellant at a point where the cattle-guard and fences could not have been maintained with safety to the trainmen in the discharge of their duties," and that appellant's demurrer should have been sustained by the trial court. In support of this position, several cases are cited.

As we have stated, the undisputed evidence was that the horse went upon appellant's railroad track and was killed at a point some five hundred feet northeast of the head-block or head of the switch, and seventy-five or one hundred feet inside of the cattle-guard, and that such point was some one thousand feet northeast of the depot. Should the court have declared as a matter of

law that the switch limits as above stated were required for the transaction of appellant's business and for the safety of its employees?

In order to bring into relief the questions here presented, we pass in review some cases from the appellate courts where the position of the appellant herein has been expressly negatived, and in which, under facts nearly parallel to those in this case, it has been held that it was not a question of law for the court but a question of fact for the jury. In the case of Acord v. Railroad, 113 Mo. App. 84, 87 S. W. 537, the switch limits under consideration is extended from one hundred and eighty to two hundred and twenty feet. The first part of the opinion deals with the killing of a cow sixty or seventy yards from the switch head. The court say on pages 89 and 90: "There is no doubt that the railroad has a right to and does maintain switches at a depot or station and it has the right to leave open and unfenced such ground traversed by the switches and so much also between the apex of the switch and the nearby cattle-guard as is reasonably necessary in order to avoid endangering the lives and limbs of its employees in performing their necessary duties in working about the switch. But it seems almost unreasonable to leave sixty to seventy yards for this purpose. The evidence is that one hundred or one hundred and fifty yards were open and unfenced at this point but as the heifer was killed sixty or seventy yards from the switch head, we are concerned with this much and no more. This would be one hundred and eighty to two hundred and ten feet. There is no evidence tending to show that it would endanger the lives or limbs of the trainmen to place the cattle-guard near the switch head; in the absence to that effect it seems that it is more than reasonably necessary for the purposes and we very promptly overrule the assignment in so far as the killing of the heifer is concerned and say that it was for the jury." On page 102 of the same opinion, the court

say: "The law will not permit the railroad to leave unfenced, on the score of station grounds, more than is actually necessary for the safe and convenient transaction of the business to be done there. . . . The evidence wholly fails to show that the stock was killed near the station. Had it shown this, we might be able to hold, as a matter of law, that such grounds *immediately adjacent* to the station even at a small place like Avert, could not be fenced without interfering with the convenience of both the public and the company and the safety of the employees as well."

In the case of Brandenburg v. Railroad, 44 Mo. App. 224, the evidence showed that the animal went upon the track about three hundred feet south of the depot and about two hundred and forty feet south of the southern end of the switch. The court say "Whether it was necessary for the safe and convenient transaction of the defendant's business with the public to leave its track unfenced to a distance of two hundred and forty feet outside the end of its switch, is a question that, in our opinion, is fairly debatable. Hence, we decline to hold that the court committed error in submitting the question to the jury in the first instance.

In the case of Downey v. Railroad, 94 Mo. App. 137, 67 S. W. 945, the stock was killed at a point about one hundred and forty yards south of the depot where there were two switches parallel with the main track, thus making the point within the actual switch yards. The defendant demanded a peremptory instruction in its favor based on this fact. It was held that "the company is not the sole judge of the space which it may leave unfenced for a yard or switch limits. It is for the jury, or the court sitting as a jury, to say throughout what distance it is necessary to leave the tracks unfenced."

The general proposition seems to be well established that, what are necessary station grounds where stock is not killed immediately adjacent to a station,

is a question of fact for the jury and not a question of law for the court. It is only where the extent of the switchyards is so reasonable or from other peculiar circumstances of the case, but one conclusion can be drawn from the evidence that the question becomes one of law for the court. [Acord v. Railroad, *supra;* Downey v. Railroad, *supra;* Brandenburg v. Railroad, *supra;* Vanderworker v. Railroad, 51 Mo. App. 166; Riley v. Railroad, 89 Mo. App. 375; Prather v. Railroad, 84 Mo. App. 86; Ellis v. Railroad, 89 Mo. App. 241; Smith v. Railroad, 111 Mo. App. l. c. 415, 85 S. W. 972.]

II.   The appellant further assigns as error the giving of instructions for respondent over its objections, of which instruction numbered three will serve as an illustration:   "You are instructed that in determining the amount of its track and the right of way which the defendant railroad had a right to leave unfenced on account of its business done at and in connection with the station at Goodman, you will take into consideration only the amount of business transacted with the public at said station *and not its own business in using the switch in question for the passing of through trains or storing of cars not used at said station,* due regard being had to the safety of the railroad employees in the use and operation of said switch."

The negative clause of this instruction—the part in italics—is the part to which the appellant takes special exception.   Speaking on this particular question as to whether the switch limits should be sufficient for the passing of through trains or the storage of cars not used at the station and the business transacted at the station, attention is directed to the case of Vanderworker v. Railroad, 51 Mo. App. 166.   The court there held that the jury should be instructed that the railroad could leave unfenced such switchgrounds "as are *necessary* to remain open for the use of the public and the necessary transaction of business at the depot or station.   The space to be kept open should be no more

than is *reasonably necessary* for the transaction of the business at the depot."

In the case of Russell v. Railroad, 26 Mo. App. l. c. 374, this statement is made: "As to the switch on the south side, there cannot be any pretense that it was used for any other purpose than for the passing of trains, and as a place for empty cars to stand, for the lack of such facilities on the Kansas City side of the river." And in the same opinion the court say: "From which it is manifest that such switches must be at or near the depot, and the space to be kept open shall be no more than is necessary for the transaction of business at that depot."

In the case of Chouteau v. Railroad, 28 Mo. App. 556, the rule is stated: "The rule in respect to the question here presented is, that though the point of injury is within switch grounds, and though such grounds be used in connection with a depot or station, the railroad company must nevertheless erect and maintain fences and cattle-guards, unless such fences would interfere with the transaction of business, to the inconvenience of the public. The test is, whether it is necessary for the transaction of business with the public that such grounds should be left open."

In the case of Smith v. Railroad, 111 Mo. App. l. c. 420, 85 S. W. 972, referring to the case of Chouteau v. Railroad, "it was explicitly decided that switches and side tracks used to stand cars on, and for switching and passing of trains, but not in connection with a depot, or in a town or village must be fenced. . . . But the policy of the law is to grant no exemption on the score of convenience and safety in doing business, except about stations and depots."

In the latest case on this subject, Bridges v. Railroad, 132 Mo. App. 576, 112 S. W. 37, the switch was thirty-two hundred feet long and stock was killed on a part beyond the town limits. The railroad claimed that to fence this part and put in cattle-guards would en-

danger the lives and safety of trainmen. The court found this to be a fact, but also found that the part of the switch within the town limits was sufficient for the local business of the station, using this language: "The maintenance of a passing-track merely, does not have any necessary connection with a station. It belongs to the general operation of the road. . . ." Again, "If a switch is not needed at a station for the public's use of the company's business at such station, its location there does not aid the company in defending against its duty to fence.

The general rule of the cases may be summarily stated as follows: The exception to the statute requiring railroad companies to fence their tracks is one of necessity and has been engrafted thereon by courts and extends only to such switch grounds at a station which are needed for the public's and the company's business connected with the station and not belonging to the general operation of the road, such as the passing of trains, storing and billing out of cars, turning in and taking out of way bills of through cars, inspecting through trains, giving and taking running orders on through trains and the like.

III. Another error assigned is that the court should not have allowed the non-expert witnesses of the plaintiff to testify as to the amount of space required for switching cars to the side track. As to the class of testimony which is sought to be reached by this objection, we quote from the testimony of witness Roberts:

"Q. How close do you say the cattle-guard could be placed there so as not to interfere with their operating the switch as you have observed? A. Well, I would judge they could have one within one hundred feet of there and be in safety from what I have seen them work there at those switch-stands and points.

"Q. Did they have to cross the cattle-guard?

"The Court: The question is whether or not in operations as you have observed if placed one hundred or one hundred and fifty feet away from there they would have to cross the cattle-guard in ordinary work as you have observed it? A. I don't think they would."

This evidence and evidence of this class introduced by the plaintiff is not mere opinion, but matters and facts within the observation of the witness. Where questions, even if objectionable in form, are understood and answered by the witness as calling for matters and facts within his observation, they do not elicit mere opinions independent of observed facts. If all the facts upon which the opinion or judgment of the witness are based are within the knowledge of the witness, and such facts are given to the jury, such explanations are not properly expert testimony and their admission or rejection is harmless. [17 Cyc., 60; Owen v. Railroad, 109 Mo. App. 608, 83 S. W. 92; Joyce v. Railroad, 219 Mo. 344, 118 S. W. 21; Hoffman v. Railroad, 51 Mo. App. 273.]

IV. It is assigned as error that the trial court excluded the questions asked by defendant of its expert witnesses Downen and Busch. As an example of the evidence proposed to be introduced, the following question was asked the witness Busch:

"Q. Taking your experience into consideration, the amount of business as shown by the witnesses as usually done at stations like Goodman, Missouri, how far is it usual and customary to place the cattle-guard from the end of the switch in order to do the switching with apparent safety to the employees?" An answer to this question was not permitted by the court. The following question was asked and allowed by the court to be answered:

"Q. Now taking into consideration your experience in railroad affairs and taking into consideration

the amount of business usually done at stations like Goodman, Missouri, how far is it usual and customary to place the cattle-guard from the end of the switch? A. Usually a train's length."

We see no grounds for complaint by reason of the denial of an answer to the first question as it is substantially covered by the answer the court allowed to be given to the second one.

But in any event, the exclusion of expert testimony in this case would have been entirely proper on the part of the court. The general rule may be thus stated: If the jury, although presumably devoid at the beginning of the trial of experience concerning a subject-matter, can be so informed during its progress as to reach an accurate conclusion, the subject is not one for inference, conclusion or judgment, and the evidence may be excluded in the discretion of the court. [17 Cyc., 45.] And it has been expressly and specifically decided in cases involving the questions at issue as to the extent of switch limits and the duty of railroads to fence that expert testimony is not allowed. [Railroad v. Modesitt, 124 Ind. 212, 24 N. E. 986.] In Railroad v. Hale, 93 Ind. 79, the court declares "that the witness cannot express an opinion upon the point which it is the duty of the jury to determine." It was for the jury from the facts in evidence to say whether the switch limits at Goodman were necessary at the place where the horse went upon the track and was killed and not a case for opinion evidence. [Railroad v. Modesitt, *supra;* 12 Cyc., 468.] The court in its discretion would have committed no error to have excluded entirely the expert testimony offered by the defendant. The evidence offered by the defendant and admitted by the court that it was usual and customary for railroads to leave as much as a train's length between the switch-point and the cattle-guard was an error in favor of the defendant. Such evidence was clearly inadmissible. A negligent act might thus be made lawful because "usual and custo-

mary." Instruction numbered eight of those given for the defendant is erroneous for the same reason. [Dougherty v. Transit Co., 128 Mo. 33, 30 S. W. 317; Barth v. Railroad, 142 Mo. l. c. 555, 44 S. W. 778; Joyce v. Railroad, *supra.*] It is unnecessary to add that a demurrer could not be predicated on incompetent evidence because uncontradicted, and even as to such incompetent evidence, it was oral. Its truth was for the jury and the court could not direct a verdict on account of such evidence, especially when such evidence was the opinion of experts. [Ellis v. Railroad, 89 Mo. App. 241; Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.]

V. Another assignment is that the court erred in giving instructions numbered two, three and four and that the same were in irreconcilable conflict with those numbered six, seven and eight given for the defendant. Upon a comparison of all the instructions given in the case, their harmony is apparent. They permitted the jury to consider all the business done at the station of Goodman which was connected with that station, they only excluded the business not connected with the station and they follow approved forms and are within the rules hereinbefore stated.

VI. In this case, it was justly assumed that the horse having been injured at a place where the defendant company was required to fence, the place of killing, in the absence of evidence to the contrary, is presumed to have been the place of entering. [Ellis v. Railroad, *supra;* Pearson v. Railroad, 33 Mo. App. 543; Adams v. Railroad, 136 Mo. App. 157, 116 S. W. 1119; Worley v. Railroad, 135 Mo. App. 461, 115 S. W. 1039.

We find no substantial error in this record, and the judgment, being for the right party, is affirmed. All concur.