St. Louis Southwestern Railway Company of Texas v. Harry L. Seay.

Decided April 9, 1910.

**1.—Railroads—Fencing Switch Yard—Necessity—Question of Fact.**

The mere fact that an animal is killed by a railroad train within the switch limits of a station would not relieve the railroad company from liability; whether or not public necessity or convenience required that the switch limits be left unfenced may be a question of fact for a jury to determine under all the circumstances.

**2.—Same.**

If the uses to which side tracks and depot grounds are put or if they are so seldom used that public necessity or convenience does not require that they be left unfenced, then for the killing of animals at such place the railroad company would be absolutely liable.

**3.—Same—Evidence.**

In a suit against a railroad company for the value of a colt killed by one of defendant's trains within the switch limits of a flag station, evidence reviewed and held to raise a question of fact whether or not public necessity and convenience required that the main track and switches at said station be left unfenced, and sufficient to support a finding in effect that there was no necessity for leaving the tracks unfenced.

Appeal from the County Court at Law of Dallas County. Tried below before Hon. W. M. Holland.

*E. B. Perkins, J. E. Gilbert* and *Daniel Upthegrove,* for appellant. —Where the undisputed evidence shows that appellee's colt was killed in the night-time within the switching limits of Meader's station, negligence must be shown before he is entitled to recover damages, and where no negligence is shown, or attempted to be shown, it is reversible error for the court to refuse to give a peremptory instruc-

tion in appellant's favor. International & G. N. R. Co. v. Cocke, 64 Texas, 151; International & G. N. R. Co. v. Dunham, 68 Texas, 232; Gulf, C. & S. F. Ry. Co. v. Anson, 101 Texas, 198; Missouri, K. & T. Ry. Co. v. Baker, 99 Texas, 452; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; Texas Central Ry. Co. v. Randal, 48 Texas Civ. App., 637.

The trial court erred in submitting to the jury as a question of fact that it was the duty of defendant to fence its depot grounds at Meader's station, unless public necessity, convenience or commerce required that said right of way be left unfenced. Under the law the defendant was not required to fence said depot grounds at said station. International & G. N. R. Co. v. Dunham, 68 Texas, 231; Gulf, C. & S. F. Ry. Co. v. Ogg, 8 Texas Civ. App., 285; Gulf, C. & S. F. Ry. Co. v. Wallace, 2 Texas Civ. App., 270; Gulf, C. & S. F. Ry. Co. v. Blankenbeckler, 13 Texas Civ. App., 249; Missouri, K. & T. Ry. Co. v. Willis, 17 Texas Civ. App., 228; Gulf, C. & S. F. Ry. Co. v. Simpson, 41 Texas Civ. App., 125; Texas Cent. Ry. Co. v. Randal, 48 Texas Civ. App., 637.

*Walter F. Seay*, for appellee.—Whether public necessity, convenience or commerce require that a right of way be left unfenced is a question of fact purely which must be submitted to the jury. Gulf, C. & S. F. Ry. Co. v. Weems, 38 S. W., 1028; International & G. N. R. Co. v. Cocke, 64 Texas, 151; Louisiana W. E. Ry. Co. v. Doon, 56 S. W., 104; International & G. N. R. Co. v. Dunham, 68 Texas, 231; Commonwealth v. Gilligan, 46 Atl., 124; In re Shelton Street Ry., 38 Atl., 362; Fort Worth & R. G. Ry. Co. v. Swan, 97 Texas, 338; Words and Phrases, 5798.

TALBOT, ASSOCIATE JUSTICE.—Appellee brought this suit to recover the value of a colt killed by one of appellant's trains at or near what is known as the station of Meaders on appellant's line of railway. A trial by a jury was had and verdict and judgment rendered in favor of appellee for the sum of $400.

Upon the theory that the evidence conclusively established that appellee's colt was killed within the switching limits of Meaders station, without negligence on appellant's part, and at a point where the defendant was not required by law to fence its track, appellant requested the court to charge the jury to return a verdict in its favor. This charge was refused and the jury instructed as follows: "You are instructed that it was the duty of defendant to fence its right of way at the place where plaintiff's colt or horse is alleged to have been killed, unless you find and believe from the evidence that public necessity, convenience or commerce required that it should be left unfenced. Now, if you find from the evidence that plaintiff's colt or horse was killed by defendant, its agents or employes, as alleged, then you will find for plaintiff against defendant for the reasonable cash market value of said colt or horse at the time and place where he was killed, unless you find for the defendant as hereinafter charged." "If you find and believe from the evidence that public necessity, convenience or commerce required that said right of way be left un-

fenced at the place where said colt or horse is alleged to have been killed, or if you find and believe that the defendant, its agent or employes, did not kill said colt or horse, as alleged, then you will find for the defendant." The refusal of the charge requested and the giving of those quoted is assigned as error.

There were two switch tracks at Meaders station west of the main track about 1,800 feet long between the switch stands, and appellant's right of way there was not fenced. There was a depot house situated about halfway between the north and south end of the switch tracks and a cotton platform north of the depot house. The colt's dead body was found lying on the main track of the railroad and about 150 or 200 feet south of the depot and north of the south switch stand, but whether the defendant was guilty of negligence in striking it, does not appear.

As to the uses made of the switch tracks, depot house and grounds, the witness Jim Meaders testified: "I think there are three trains each way that are supposed to stop there daily; that is, whenever there is any one to get on or off; those switches are used to put empties on them, and if any one has any freight I guess they would use them for that. There has been some freight shipped up there. One carload of brick was brought in there, and there was some gravel brought in there for the county, and I think there is some house planks shipped in there. You can ship anything you want to Meaders station if you prepay it. You can take anything down there you want to and ship it by making arrangements to get a car. The tracks are used for trains to pass if two trains should meet out there. I have seen lots of cars out there on those switches. They would be nearly full of cars, strung out all the way along, and the tracks are used as railroad sidings and are usually used by trains passing backward and forward. About the passenger traffic there: there is a good deal—a right smart. Several people get on and off the cars there, but there is not very many of them. You can get on the train out there about eleven o'clock and go back about four in the afternoon, and have three or four hours in town. It is a tolerably thickly settled community out there. People that want to take either one of those trains go down there and get on the train and come to town, and then get on the train here in town and go back out there and get off. I do not think there has ever been any cotton shipped from that platform. There is no cotton buyer up there. There is a platform on which you can load cotton or anything else that you want to load into a car. You can flag the night trains and they will stop to let you get on or get off. All of the passenger trains stop when you want to get on or off except the 'Flyer.' The 'Flyer' never stops there. The local trains will stop to discharge and take on passengers. If I were informed that there had been something like two thousand people gotten on the trains there from that station since the four or five years that road has been there I do not think it would be an unusual number. I don't know what the average during a day is. I have never paid very much attention to that part of it. There is a tool house south of the depot. They are now using the depot for the section house. The road leads right out from the depot, right on east to the Preston road, and that

is the way the people go to and from the station. When the station of Meaders was built there it was named after me. I reckon you would call it a flag station. I don't think they stop unless there is somebody on there that wants to get off. It may be they sometimes stop to put off mail to the hands. There is no agent or stores in the town of Meaders. The closest residence is right there at the station. The next closest house is my home, about 400 yards. There is another house that a negro lives in that may be a little closer than mine. There is only one house within a radius of 300 yards of the station. It has been there seven years, maybe a little longer. I have not been keeping any tab on it, and don't know that I could make a positive statement, but my best idea about it is that there was one carload of brick unloaded there, and there has been three or four carloads, or two or three carloads, I think, of gravel. There was a carload of coal, and Moore shipped his goods and unloaded them there, and I had a piano shipped there. That is all that I can call to memory just now. There is a lane that runs from the Preston road to the station and there it stops. It runs from the Preston road west to the railway company's track and there it stops, and does not go beyond it. I gave the land to Dallas County myself. The four or five cars that have been unloaded there were unloaded north of the depot. I do not recall any car being unloaded south of the depot. The railway runs north and south. The depot building is right in front of the lane that runs to the Preston road. I talked to the company and stated the conditions out there, and at my request they built a depot. At that time I supposed there might be a little town built out there. I left a tier of blocks that could be used for building sites on the south of the depot and left the grounds unfenced that could be utilized that way. But the market has never opened up for it up to this time. They had an agent there for a month or six weeks when the road first opened. It was a while after the road was opened when they were hauling gravel and trains passing there, and hauled some gravel down there to put on this place. They have not had an agent there recently."

It is unquestionably true that the laws of this State, "imposing a liability on railway companies' for injuries done to animals, unless their railways are fenced, do not apply to such places as public necessity or convenience require should be left unfenced" (International & G. N. Ry. v. Cocke, 64 Texas, 151; International & G. N. Ry. v. Dunham, 68 Texas, 231), but whether the place where appellee's colt was killed was of that character at the time of such killing became and was, under the evidence, a question of fact for the determination of the jury. That it would have been impracticable or unlawful for appellant to fence its railway at and along its switches and depot grounds at Meaders station is not, in our opinion, conclusively made to appear by the evidence. We do not understand that the mere fact that a railway company has constructed switches or sidetracks and a depot house, etc., at a particular point on its line of road, and that the animal, for the death or injury of which damages is sought to be recovered, was killed within such switching limits, constitutes, as a matter of law, the place one not required to be fenced, and exempts

the company from liability unless it failed to exercise ordinary care to avoid killing the animal. If the uses to which such switches and grounds are put, or if they are so seldom used that public necessity or convenience does not require that they be left unfenced, then for the killing of stock at such place the railway company would be absolutely liable. Whether in the case at bar there had been such infrequent use, or practically such an abandonment of the depot and contiguous switching grounds at Meaders station, that public necessity or convenience did not require that they be left open and unfenced, was a question of fact properly submitted to the jury for decision. They had been constructed by the appellant, some four or five years prior to the time appellee's colt was killed, at the request of Meaders, with the expectation that it would result in the building of a town there. In this there had been a disappointment. No town was there at the time this case was tried, and, as will be seen from the testimony quoted, appellant had kept an agent at the station for only about one month, and had converted the depot house into a section house. The station at best was only a flag station, and during its existence of some four or five years but few passengers comparatively had boarded and alighted from trains there. Only a small quantity of freight, consisting of a piano for Meaders, some "house planks," bricks and gravel had been shipped there, and the sidetracks had been used only occasionally for the passing of trains and storing of empty cars thereon.

The cases cited by appellant in support of its contention that its station and depot grounds contiguous thereto were such as to exempt it from liability for the killing of appellee's colt in the absence of proof of negligence on its part, were cases in which the testimony showed that the animal was killed either at a public road crossing or within the switching limits of the railway company situated in a city or town where it was conclusively shown that public necessity or convenience demanded that the railway tracks be left unfenced. These cases, in our opinion, are dissimilar in their facts to the present case and do not control its decision.

The assignments disclose no reversible error, and the judgment of the court below is affirmed.

*Affirmed.*