## ST. LOUIS SOUTHWESTERN RY. CO. et al. v. BUICE. (No. 20.)

(Court of Civil Appeals of Texas. Waco. April 3, 1924. Rehearing Denied May 22, 1924.)

**1. Railroads ⬅411(16)—Fencing statute inapplicable to "depot grounds."**

Stock Fence Law is inapplicable to public streets and roads, and to places that public necessity or convenience requires to be left unfenced, such as "depot grounds," which means not only the depot proper, with platforms and approaches, but also all territory and switch tracks convenient and reasonably necessary for use of public in transacting business with the carrier and actually so used, and facilities reasonably necessary to enable such company to discharge its duty to the public with promptness and efficiency and safety to its employees, and actually so used, and when it is established that a particular point within the switch limits of a station meets the above test, such point is part of the "depot grounds" as respects liability for failure to fence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depot Grounds.]

**2. Railroads ⬅441(6) — "Depot grounds" within fencing statute question of fact as to which burden of proof is on railway.**

The necessary exception from Stock Fence Law of "depot grounds" does not, as a matter of law, include the switch stands and all switches or side tracks at all depots and stations; but whether a particular point within the switch limits of a station or contiguous to such limits is a part of the "depot grounds," or is a place at which the railway is by necessity excepted from the statutory liability for failure to fence, is a question of fact; and the burden is on the railway to show such fact by preponderance of evidence.

**3. Railroads ⬅446(7)—Public use as element of depot grounds within fencing statute held for jury.**

Whether place where plaintiff's cow was killed, between depot and end of passing track, was a place where the railway was by necessity of its public use excepted from liability for failure to fence under Rev. St. art. 6603, held for jury.

**4. Railroads ⬅446(7)—Danger to employees as element of depot grounds within fencing statute held for jury.**

Whether place where plaintiff's cow was killed, between depot and end of passing track, was a place which could not have been fenced without danger to railway's employees, so that railway was relieved from liability for failure to fence under Rev. St. art. 6603, held for jury.

**5. Appeal and error ⬅930(1)—Evidence construed in light most favorable to sustain submission of issue.**

In passing on sufficiency of evidence to justify submission of issue and support verdict thereon, appellate court must consider it in light most favorable to sustain submission and support verdict.

Appeal from McLennan County Court; Giles P. Lester, Judge.

Action by H. W. Buice against the St. Louis Southwestern Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 251 S. W. 584.

Terry, Cavin & Mills, of Galveston, for appellants.

Sanford & Harris, S. P. Ross, John F. Sheehy, and Jake Tirey, all of Waco, for appellee.

GALLAGHER, C. J. Appellee H. W. Buice sued appellants St. Louis Southwestern Railway Company of Texas, called Cotton Belt herein, and the Gulf, Colorado & Santa Fé Railway Company, called Santa Fé herein, to recover damages for killing a cow. The suit was instituted in the justice court. A trial in that court resulted in a judgment in favor of appellee. Appellants carried the case to the county court on appeal. The case was tried in that court before a jury. It was submitted on a general charge. The jury returned a verdict in favor of appellee. From judgment on said verdict appellants have brought the case to this court on appeal.

The Cotton Belt owns and operates a line of railroad westward from Waco to the junction of the Santa Fé at McGregor and beyond. The distance from Waco to McGregor is 20 miles. The station of South Bosque is situated about midway between Waco and McGregor. At the time plaintiff's cow was killed, South Bosque contained four residences; one of them being combined with a store, which store seems to have been the only one at that place. There was also a gin operated there. There was a depot building at South Bosque, but there was no agent there, and none had been kept there for a number of years. Parties receiving or loading baggage or express received or delivered the same from or to the car themselves. The main line of railroad ran through the station from east to west. There was a spur track leaving the main line some distance east of the depot and running to the gin, which was located north of the depot and across the public road therefrom. There was also a passing track which left the main line about 600 feet east of the depot and ran south of and parallel with the main line a distance of 1,200 or more feet, where it connected therewith. The distance between the rails of the passing track and the main line where the cow was killed was only about 10 feet. The distance from the depot to the west end of the passing track was 540 feet, and from that point to the

abutment of the railroad bridge across the Bosque river was 134 feet. The south line of the railroad right of way abutted on private property, inclosed by a fence; but none of the right of way was fenced from the depot west to the river. How far the right of way was unfenced from the depot eastward is not disclosed. The Cotton Belt ran at that time two passenger trains a day each way, all of which stopped at said depot. It also ran one freight train a day each way, and sometimes extras. The Santa Fé operated its trains over said track between McGregor and Waco under some traffic arrangement not disclosed by the evidence. It ran mixed trains only. One such train was run each way every day. Its east-bound train on the main line about 4 o'clock on the morning of July 10, 1921, struck and killed appellee's cow somewhere west of the depot and east of the west end of the passing track.

The court instructed the jury in substance that they should find for appellee for the value of his cow unless they believed from the evidence that public necessity, convenience, commerce, or the safety of appellants' employees required that its right of way be left unfenced at the point where said cow was killed, in which event they should find for appellants. The jury returned a verdict for the appellee for $50, and judgment was rendered in his favor against both appellants therefor.

[1] The first proposition submitted by appellants in support of their appeal is as follows:

"A railroad company, as a matter of law, is not required to fence its tracks within its depot grounds and within the switch limits of a station, so that where the evidence is undisputed that the injury to the animal occurred within the depot grounds, or within the switch limits, it is error to submit to the jury the question as to whether or not the place should be fenced."

Article 6603 of the Revised Statutes of this state in general terms provides that railroad companies shall be liable for the value of all stock killed or injured by their engines and cars, but provides that in the event a railway company shall fence its road it shall be liable only for injuries resulting from lack of ordinary care. No part of the railroad is by the terms of the statute excepted from its operation. The courts of this state and the courts of other states construing similar statutes have, from the necessities of the case, read into such statutes certain exceptions, and have uniformly held that such statutes do not apply to places where a railway company is prohibited by law from fencing its track, as where its track runs along a public street or crosses a street or public road, nor to places that public necessity or convenience requires to be left unfenced, such as its depot grounds. I. & G. N. Ry.

Co. v. Cocke, 64 Tex. 151; I. & G. N. R. Co. v. Dunham, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484; Wilmot v. Oregon R. & N. Co., 48 Or. 494, 87 Pac. 528, 7 L. R. A. (N. S.) 202, 120 Am. St. Rep. 840, 11 Ann. Cas. 18.

"Depot grounds," as used in the cases just cited, with reference to the exemption of a railway company from liability for killing or injuring live stock on the ground that its track was not fenced at that particular point, is not only a comprehensive but also a flexible term. It means not only the depot proper, with its platform and approaches, but also all territory and switch tracks convenient and reasonably necessary for the use of the public in transacting its business with such company as a common carrier and actually so used, and such facilities of that character as may be reasonably necessary to enable such company to discharge its duty to the public with promptness and efficiency, and with safety to its employees; such facilities being so used. Wilmot v. Oregon R. & N. Co., supra; Grosse v. Chicago & N. W. R. Co., 91 Wis. 482, 65 N. W. 185. Since the same reason for exemption from the provisions of such fencing statutes as ours covers both the depot grounds and the switching facilites necessarily used in connection therewith, many of the decisions deal directly with the question of whether or not the company is required to fence the territory embraced within its switch limits at stations without in terms calling them a part of the depot grounds. Whether dealt with as a part of the depot grounds or separately as switch limits, the principle involved is the same, and the distinction, if any, a mere matter of terminology. When it is established as a fact that a particular point within the switch limits of a station meets the test above recited, the railway company is exempted as a matter of law from liability arising solely on account of its failure to fence its track, and such point is a part of the depot grounds within the meaning of that term as used in Railway v. Cocke, supra.

[2] While all the courts are in practical accord on the proposition that such statutes do not require a railway company to fence its depot grounds, and that a failure to fence such grounds does not of itself render such company liable for stock killed thereon, they are not in accord as to what constitutes depot grounds. Some of the cases hold that such grounds include not only the depot itself and grounds contiguous thereto, but also all territory embraced within the limits of the system of switches laid out for use at such station, without proof of necessity or use. Such seems to have been the holding of the Court of Civil Appeals for the First District in the case of Railway v. Ogg, 8 Tex. Civ. App. 285, 28 S. W. 347, and in the case of Railway v. Wallace, 2 Tex. Civ. App. 270, 21 S. W. 973. In the first of these cases the facts are not stated, further than

that the animal was killed within the switch limits at the depot at Belleville. Whether the uncontradicted evidence showed sufficient use by the public of the switch or switches and the territory adjacent thereto, where the animal was killed, as to establish as a matter of law that public necessity or convenience required such place to be left open and unfenced, is not disclosed by said opinion. In the second case, the court found that the animal was struck upon a public crossing. Determination of the question of whether such crossing constituted a part of the depot grounds or not was not necessary to the disposition of that case. The Court of Civil Appeals for the Second District, in the cases of Railway v. Blankenbeckler, 13 Tex. Civ. App. 249, 35 S. W. 331, and Railway v. Hodge & Speer, 58 Tex. Civ. App. 540, 125 S. W. 350, has expressly held in effect that the depot grounds include as a matter of law the switch stands and all switches or side tracks at all depots and stations.

The great weight of authority, however, is to the effect that whether a particular point within the switch limits of a station or contiguous to such limits is a part of the depot grounds of such station, or is a place at which a railway company is excepted by necessity from the statutory liability for a failure to fence its track, is a question of fact which, in jury cases, is to be determined by the jury under proper instructions; the burden being on the railway company to show such fact by a preponderance of the evidence. Railway v. Cocke, supra, page 155; Railway v. Dunham, supra; G., C. & S. F. Ry. Co. v. Weems (Tex. Civ. App.) 38 S. W. 1028; Texas & Pacific Ry. Co. v. Billingsly (Tex. Civ. App.) 37 S. W. 27; Hines v. Easterly (Tex. Civ. App.) 224 S. W. 943; Houston & T. C. Ry. Co. v. Holbert (Tex. Civ. App.) 182 S. W. 1180; St. Louis Southwestern Ry. Co. v. Seay, 60 Tex. Civ. App. 301, 127 S. W. 908; Davis v. Etter & Curtis (Tex. Civ. App.) 243 S. W. 603; St. Louis B. & M. Ry. Co. v. Knowles (Tex. Civ. App.) 171 S. W. 245; I. & G. N. Ry. Co. v. Merideth (Tex. Civ. App.) 137 S. W. 922; Louterstein v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 144 S. W. 310; Dunaway v. Lancaster (Tex. Civ. App.) 241 S. W. 577; St. Louis B. & M. Ry. Co. v. Dawson (Tex. Civ. App.) 174 S. W. 850; Ft. Worth & D. C. Ry. Co. v. Decatur Cotton Seed Oil Co. (Tex. Civ. App.) 193 S. W. 392; Wilmot v. Oregon R. & N. Co., supra, and authorities cited therein and in the comprehensive note thereto.

[3] The evidence in this case is, in our opinion, wholly insufficient to establish as a matter of law that the place where appellee's cow was struck was a place at which appellants were excepted by necessity as above defined from the statutory liability for a failure to fence their track, and appellants' first proposition is overruled.

[4] The remaining propositions submitted by appellant assert that the court erred in submitting the case to the jury, and are as follows:

"(2) When the uncontradicted evidence shows that it would be dangerous to the employees of the railway company to fence its tracks, or to erect the necessary cattle guards at the point where an animal was' injured, it is error to submit to the jury the question of whether or not the tracks should have been fenced, for the reason that there is no evidence to support a verdict against defendants.

"(3) When the overwhelming weight of the evidence shows that it would be inconvenient to the public and to commerce to fence the track at a point where an animal was injured, it is error to submit to the jury the question of fencing at that point, because, under the law, the railroad company is not required to fence its tracks at such a point."

[5] There are many sharp conflicts in the evidence; but in passing upon the sufficiency of the same to justify submission of the issues involved in said propositions to the jury for determination and to support the verdict returned by the jury in response to such submission, we are required to consider said evidence in the light most favorable to sustain such submission and to support such verdict. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139, and authorities there cited. We shall so consider it and so recite the facts. Passenger trains in serving the public at said station used only the main line. East-bound passenger trains stopped with the rear coach at or near the depot, and were in no way concerned with the question of whether the track west of the depot was fenced or not. West-bound passenger trains stopped with the rear coach at or just east of the depot, so that the baggage and express, if any, could be loaded or unloaded from the end of a cinder platform extending 140 feet west of the depot. Appellee's cow was found 156 feet west of the depot, having been struck by an east-bound train, as indicated by blood and hair on the track west of where it was found. It was for the jury to say whether it was struck at the place where it was found or further west. Railway v. Merideth, supra. There being no agent at South Bosque, there was apparently no necessity for engineer or fireman to leave the engine and go back to the depot to send information or receive orders. The evidence raised an issue as to whether the track at the place where said cow was struck could have been fenced without inconvenience to the public passenger traffic at such station and without danger to the employees operating passenger trains. The evidence showed that all carload freight delivered at South Bosque or received at that point was handled on the spur track, which left the main line some distance east of the depot and ran north of the depot. All local freight was received or delivered at the depot. There is no affirmative evidence that in handling such local

freight either the convenience of the public or the safety of the employees of the company would be affected by fencing the track where appellee's cow was struck. Such issue was therefore a question for the jury under the authorities above cited.

There was testimony tending to show that the passing track, the only one extending west of the depot at South Bosque, was, when used at all, used exclusively for passing trains, and that it was never used by the public at all. There was also testimony tending to show that such use was practically abandoned and had been for some time before appellee's cow was killed. In explanation of this contention, it was shown in evidence that about five years before the killing of said cow, appellant Cotton Belt had constructed a longer passing switch somewhere west of the river, and that such switch was so located that east-bound freight trains after leaving the same continued on level ground long enough to acquire momentum sufficient to enable them to make the grade immediately east of South Bosque without difficulty. It was also shown affirmatively that this new passing switch was the one generally used when a passing of trains in that locality was necessary. There is a line of authorities holding that switch tracks used solely for the passing of trains are not within the exception which excuses the fencing of switches necessarily used by the railroad in the discharge of its duties to the public. The argument in such cases is that the location and use of passing tracks at stations is a matter of mere convenience to the railroad, and that no public interest is subserved thereby. Prickett v. Atchison, T. & S. F. R. Co., 33 Kan. 748, 7 Pac. 611; Atchison, T. & S. F. Ry. Co. v. Shaft, 33 Kan. 521, 6 Pac. 908; Greeley v. St. Paul, M. & M. Ry. Co., 33 Minn. 136, 22 N. W. 179, 53 Am. Rep. 16; Green v. Kansas City Southern Ry. Co., 142 Mo. App. 67, 125 S. W. 865, 869. See, also, Wabash R. Co. v. Howard, 57 Ill. App. 66. It is not necessary, however, to base our decision on such line of authorities. There was evidence in this case tending to show that the fencing of the main line and passing track at the point where the cow was struck, and the maintenance of the necessary cattle guards and wing fences required thereby, would not be necessarily dangerous to trainmen acquainted with the situation. There was also evidence tending to show that with one switchman at the front of the train to open such switch at each end, and another at the rear of the train to close the same, a train could be operated on such passing track with safety to employees, notwithstanding cattle guards and wing fences were located thereon between the depot and the west end of said passing track. In view of the evidence tending to show a practical abandonment of the use of said passing track and tending to show such use unnecessary by reason of the existence of better facilities a short distance west of said station, we think that an issue as to whether said tracks could have been fenced where said cow was struck without unreasonable burden on appellants, and with reasonable safety to their employees exercising ordinary care for their own safety, was raised by the evidence, and that the court did not err in submitting such issue to the jury. Appellants' second and third propositions herein under consideration are overruled.

The judgment of the trial court is affirmed.