Filed June 16, 1887.

---

No. 12,377.

## THE CINCINNATI, HAMILTON AND INDIANAPOLIS RAILROAD COMPANY v. JONES.

RAILROAD.—*Bridge Abutting on Highway.*—*Fence.*—*Stock.*—While a railroad company is not required to fence its track, or to maintain cattle-pits, at points where to do so would interfere with the safety of its employees in operating trains, or where fences or cattle-pits would interfere with its rights or with the rights of the public in travelling or doing business with the company, yet the burden is upon the company to show that, in constructing and maintaining a bridge abutting upon a highway, it had adopted all reasonable and practicable precautions to keep animals from entering upon the bridge from the highway; and it does not alter the case that the bridge may have been partially in the highway, or that the animal may have been struck while upon that part of the bridge extending into the highway, on ground appropriated by the company.

SAME.—*Securely Fenced.*—Where, in the absence of a showing that it is reasonably impracticable to do otherwise, a railroad company maintains a bridge in such a condition that animals may enter upon it from a public highway, thus putting in jeopardy the safety of trains as well as the lives of the animals, the railroad is not securely fenced.

SAME.—*Evidence.*—*Hypothetical Question.*—In an action against a railroad company for killing a mare, it is not error to permit the following ques-

tion to be answered: "Suppose 'Little Miss' (the mare) was in as good condition, sound in wind and limb, at the time she was killed in October, 1884, if she was killed then, as she was when you knew her last, then I will ask you to state what was her fair market value;" especially so where counsel apprise the court that if they do not maintain the hypothesis upon which the question is put, the evidence shall be struck out.

SAME.—*Race-Horse.*—*General Reputation.*—In such case, evidence of the general reputation of the mare among horsemen and turfmen, with reference to her being rattle-headed or disposed to break when racing, is not admissible.

SAME.—*Practice.*—*Witness.*—Where it does not appear from any statement in the record what a witness would have testified to in answer to an interrogatory, the sustaining of an objection presents no question on appeal.

From the Rush Circuit Court.

*R. D. Marshall* and *J. W. Study*, for appellant.

*B. L. Smith, W. J. Henley, C. Cambern* and *T. J. Newkirk*, for appellee.

MITCHELL, J.—This was a suit to recover the value of a mare alleged to have been struck and killed by the appellant's engine and train of cars, on the 18th day of October, 1884. The complaint charged that the railroad was not securely fenced at the place where the animal went upon the track. The issue was made by a general denial. There was a trial, verdict and judgment for $3,500.

It is urged on behalf of the appellant, that the verdict is not sustained by the evidence.

The railroad company rested its defence mainly upon the proposition that it was under no legal obligation to maintain a fence at the place where the animal entered upon its track.

It appears from the evidence, that the appellant's line passes east and west through the city of Rushville. A short distance east of the east boundary of the city limits the railroad intersects a highway, known as the Michigan road, which runs north and south. At the point of intersection, and for some distance either way, the highway runs parallel with and along the west bank of a race or watercourse, over

which the railway track is laid upon a wooden bridge, some sixty feet in length. The west end of the bridge is on a level with the highway, and within the highway limits, not more than seven feet distant from the travelled track. The width of the highway at the point of intersection, counting from the west end of the bridge, is but twenty-seven feet. The railway bridge was covered with plank or cross-ties, three inches thick, and about nine inches wide, laid from two to two and a half inches apart. Guard-rails designed to afford protection to engines and cars, in case of derailment, were placed at suitable distances from the rails of the main track, and the evidence tended to show that the security of trains, in case of derailment on the bridge, rendered it necessary to place the cross-ties close together. As a means of deterring animals from going upon the bridge, two cross-ties had been omitted or taken out, one about three and the other about five feet from the west end. Whether any more effective means for that purpose could have been employed, with a due regard for the safety of trains and employees, does not seem to have been the subject of any testimony one way or the other. The railroad company relies upon what it claims to have established as the fact, that the west end of the bridge extends necessarily into the highway limits, and that the animal when struck, although upon the west end of the bridge, was, nevertheless, within the bounds of the highway. The company claims further, that a cattle-guard could not have been constructed to the westward of the bridge without encumbering the highway and rendering travel thereon dangerous. It appears that the plaintiff's mare escaped from a pasture-field, and, passing along the highway, entered upon the west end of the bridge, where she was struck by an engine about five o'clock in the morning. There was evidence from which the jury may have believed that the animal had passed over the openings in the west end of the bridge, and that she had turned westward, and was trying to escape to the highway, when struck by the engine. Other evidence

tended to show that she had fallen into the openings and was struggling to extricate herself when the engine came upon her. Since there seems to have been no dispute but that the west end of the bridge was substantially in the highway, it is made reasonably clear that the railroad company could not lawfully have placed a cattle-pit to the westward of the bridge. The highway ran parallel with and along the margin of the race. A fence could have served no useful purpose, and as there was only seven feet between the west end of the bridge, which was in the highway, and the travelled track, to have placed a cattle-pit there would have been manifestly an unlawful and dangerous obstruction in the highway.

It is abundantly settled that a railroad company is not required to fence its track nor to maintain cattle-pits at points where to do so would interfere with the safety of its employees in operating trains upon the road, or where fences or cattle-pits would interfere with its rights in the transaction of business with the public, nor where the rights of the public in travelling or doing business with the company would be interfered with. When animals enter upon railroad tracks at such places and are killed within limits that can not and are not required to be fenced, the company is not liable under the statute. *Indiana, etc., R. W. Co.* v. *Quick,* 109 Ind. 295; *Indiana, etc., R. W. Co.* v. *Sawyer,* 109 Ind. 342; *Fort Wayne, etc., R. R. Co.* v. *Herbold,* 99 Ind. 91.

The company did not, however, make its defence complete, by showing that it could not maintain a fence or cattle-pit in the highway. The location of its bridge was such that it was necessary that it should have been so constructed as to prevent animals from entering upon it; or, if this was impracticable, the fact should have been made to appear.

While courts may say as matter of law that railroad companies can not be required to erect fences or construct cattle-pits in public highways, courts can not judicially know that a railroad bridge abutting upon a highway may not reasonably be so constructed as to deter animals from entering

thereon, and yet be secure for the passage of engines and trains. If, with reasonable skill and care, a railroad bridge so situate can be so constructed and maintained as to prevent animals from entering upon it, and yet be safe for the business of the company, a due regard for the safety of trains and those travelling upon them, as well as for the safety of animals, imposes the duty upon the company of exercising the degree of care and skill required to construct and maintain such a bridge. As has been observed before, we find no evidence upon this subject. The burden was upon the company to show that it had adopted all reasonable and practicable precautions to keep animals from entering upon the bridge from the adjacent highway. *Cincinnati, etc., R. W. Co.* v. *Parker,* 109 Ind. 235; *Louisville, etc., R. W. Co.* v. *Clark,* 94 Ind. 111; *Louisville, etc., R. W. Co.* v. *Shanklin,* 94 Ind. 297.

Until it appears that it is reasonably impracticable to construct bridges with cattle-guards, we are constrained to hold that where a railroad company maintains a bridge in such a condition that animals may enter upon it from a public highway, thus putting in jeopardy the safety of trains, as well as the lives of the animals, the railroad is not securely fenced. *Louisville, etc., R. W. Co.* v. *Porter,* 97 Ind. 267; *Evansville, etc., R. R. Co.* v. *Barbee,* 74 Ind. 169.

It does not alter the case that the bridge may have been partially in the highway, or that the animal may have been struck while upon that part of the bridge which extended into the highway limits. If the railway company appropriated part of the highway to the purpose of maintaining its bridge, and left its structure in such a condition that animals could enter upon it, the company will not be heard to say that animals killed upon the bridge were killed within the limits of the highway. After the railway company converted part of the highway to the support of its railway bridge, that part of it which was occupied by the bridge, and the tracks thereon, could not be regarded as part of the highway.

At the trial the plaintiff was permitted, over the objection

of the appellant, to ask the following question : "Suppose 'Little Miss' was in as good condition, sound in wind and limb, at the time she was killed in October, 1884, if she was killed then, as she was when you knew her last, then I will ask you to state what was her fair market value."

It was not error to permit the question to be answered, especially as the record in that connection indicates that counsel for plaintiff apprised the court that if they did not maintain the hypothesis upon which the question was put the evidence should be stricken out. *City of Indianapolis v. Scott*, 72 Ind. 196; *Pennsylvania Co.* v. *Marion*, 104 Ind. 239; *Nave* v. *Tucker*, 70 Ind. 15.

Until the contrary appears, we must assume that other evidence was given in support of the hypothesis upon which the question rested, or that it was withdrawn from the jury.

Rulings made by the court in respect to admitting and excluding evidence upon various subjects connected with the condition of the animal at the time she was killed, in respect to her market value at Rushville, if withdrawn from the race-course, whether or not she had been the loser in races, and as to her comparative value with another animal named, are the subjects of comment by counsel. Without going into details upon these subjects, it is sufficient to say that we have considered the questions presented and have found no error in the rulings of the court.

The value of the animal as a broodmare came in question at the trial, and the appellant asked a witness what one of her colts, which had been sold some years before, brought at a public sale at or near the city of Rushville. The court sustained an objection to the question. It does not appear from any statement in the record what the witness would have testified to in answer to the question put. No question is, therefore, presented for consideration. *Higham* v. *Vanosdol*, 101 Ind. 160.

Questions were asked by the appellant in reference to the general reputation of the mare among horsemen and turfmen,

"with reference to her being 'rattle-headed' or disposed to break" when racing. These were questions of fact, to be proved by persons acquainted with the performances of the animal upon the track. We are not directed to any authority, and we know of none, which sustains the claim that the general reputation of the animal was admissible in evidence.

Numerous other questions relating to rulings upon the evidence are discussed. We have examined them, and find no error.

The questions growing out of the refusal to give certain charges asked by the appellant have been considered and disposed of by what has already been said upon the subject of the duty of the railroad to maintain its bridge in such a condition as to prevent animals from going upon it.

The instructions asked and refused proceeded upon the assumption that if the animal entered upon the railroad track at a public crossing, or if the west end of the bridge extended into the highway, so that no cattle-pit could have been maintained therein, or if the animal was killed on the bridge within the limits of the highway, then in either case no recovery could be had by the plaintiff. As has already been seen, neither of the foregoing theories, without more, is maintainable. There is evidence which sustains the amount assessed by the jury.

Under the well settled rule we can not disturb a verdict upon what we might suppose to be the weight or preponderance of evidence. The instructions of the court put the case fairly to the jury. There was no error.

Judgment affirmed, with costs.

Filed May 23, 1887; petition for a rehearing overruled June 16, 1887.