## REID v. SAN PEDRO, L. A. & S. L. R. CO.

No. 2422.    Decided April 24, 1913 (132 Pac. 253).

RAILROADS—INJURIES TO ANIMALS ON TRACK—LIABILITY—FAILURE TO
FENCE. A railroad company was not liable for injuries to stock
caused by its failure to construct a fence between its depot
grounds and adjoining private land, where the fence would have
been but thirteen and one-half feet from the freighthouse, and
would necessarily have interfered with free access to the freight-
house and with the loading and unloading of freight between
the fence and the freighthouse, under Comp. Laws 1907, section
456x, requiring railroad companies to maintain a fence on each
side of its railroad where it passes over land owned and im-
proved by private owners, and connect them at public cross-
ings with cattle guards, especially where such fence would have
been useless, because of the absence of any fence between the
private lands and a street which intersected the depot grounds,
since notwithstanding the statute the company is not required
to fence such depot grounds as the necessities or convenience of
the public and the proper conduct of the business of the road at
such places require to be left open and unobstructed, and public
convenience at such places requires unobstructed access to the
buildings and tracks.

APPEAL from District Court, Third District; *Hon. Geo.
G. Armstrong*, Judge.

Action by Janet Reid against the San Pedro, Los An-
geles and Salt Lake Railroad Company.

Judgment for plaintiff.    Defendant appeals.

REVERSED AND REMANDED.

See also 39 Utah, 617, 118 Pac. 1009.

*Dana T. Smith* for appellant.

*Allen T. Sanford* for respondent.

STRAUP, J.

This is an action to recover damages for the killing of two horses and a cow by the defendant in the operation of its railroad. The case was tried to the court and a jury, and resulted in a judgment in favor of the plaintiff. The defendant appeals.

The action is based on a failure to fence at the place where the stock entered the defendant's right of way. Our statute (Comp. Laws 1907, sec. 456x) requires every railroad company operating a railroad by steam power to erect and maintain "a fence on each side of its railroad where the same passes through lands owned and improved by private owners, and connect the same, at all public road crossings, with cattle guards."

The respective contentions are these: The plaintiff, that the defendant was required to fence at the place where the stock entered the right of way but had not done so; the defendant, that the place was depot grounds, and hence it was not required to fence. The court let the case to the jury, charging them: No. 6: "You are also instructed that it is conceded that Garfield station is a station on defendant's railroad where such railroad receives and discharges freight and passengers, and where said road maintains a station for the use of the public and said railroad, and the grounds thereabout. If you believe from the evidence that no fence was maintained on the south side of the freighthouse of the defendant company, and that no such fence could be erected or maintained without obstructing the access by the public, and that such was reasonably necessary, convenient, and actually used for the purposes of station grounds, then the said defendant was not bound to construct or maintain a fence at this point to the detriment of the public, and if the jury believe from the evidence that said animals came upon said railroad station grounds in consequence of the failure of the defendant to erect and construct such fence, and that in consequence thereof said animals were killed, then the defendant is not liable." No.

7: "If, however, you find that the place where the animals entered upon such station grounds was not within the limits of the grounds which were reasonably necessary for such station uses in defendant's dealings with the public and for the transaction of the company's business as herein stated, then the law as to fencing set forth in the next preceding instruction would apply, and the defendant would be required to fence at said point where said animals entered upon its station grounds." The defendant, contending that there was no dispute as to the facts upon which the court in instruction No. 6 directed the jury to find for the defendant, and that the facts assumed in instruction No. 7 were on the record expressly admitted, requested the court to direct a verdict in its favor. This the court refused.

The facts which determine the rights of the parties are substantially without dispute. The injury occurred at Garfield station, which is about one-half mile north of the town of Garfield in Salt Lake County. There the defendant's railroad track runs east and west. When the road was constructed the right of way at the place in question was fenced on both sides. About four years prior to the injury Garfield station was established by the defendant. A passenger depot, a freight depot, a coal bin, and a warehouse and water tank were erected at this place on the defendant's right of way to handle the passenger and freight business of Garfield, which, as is conceded by the plaintiff, "was considerable." It is somewhat difficult to intelligently describe the depot grounds and premises without reference to the following drawing, which is a miniature of an exhibit in evidence:

Line a-b on the drawing is a wire fence marking the north boundary of defendant's right of way. Line c-k is the south boundary. B is the passenger depot. The dotted space surrounding it and to the east and west indicates walks. C is the freight depot. The white space surrounding it indicates a platform. D is the coal bin; E, a warehouse; A, a water tank. The lines north of the passenger and freight depots and the walks indicate railroad tracks. The characters across the tracks at both ends indicate cattle guards; the lines leading from them to the north and south side of the right of way are wing fences. The width of the right of way at the passenger depot is 100 feet; at the freight depot 150 feet. The distance from the west to the east cattle guard is 1932 feet, which is the length of the depot grounds. The distance from the passenger depot to the freight depot—B to C—is about 640 feet; from the freight depot to the warehouse about 320 feet. The distance between the freight depot and the south side line of the right of way is thirteen and one-half feet. The lands lying to the south of the right of way and between it and the town of Garfield are platted into lots, blocks, and streets, but are not so laid off on the ground, except Lincoln Avenue, which is the main thoroughfare from the depot grounds to the town of Garfield, and the western portion of Twenty-Fifth Avenue which joints Lincoln Avenue at the south side of the right of way. Otherwise the lands lying immediately to the south of the right of way were used for pasturing, except the lot or block at the corner of Lincoln and Twenty-Fifth Avenues, which was used by private parties for a lumberyard. When the defendant established the depot grounds at Garfield station and put up its passenger and freight depots, it took down the fence along the south boundary of its right of way from the point c to the point h, a little east of the freight depot. The fence thereafter existed along the south boundary line from h east to k, but was not thereafter maintained by the defendant. A wire fence, as indicated on the drawing, was constructed by some one other than the defendant from the point h southwesterly across Twenty-Fifth Avenue

to g, thence westerly to f to Lincoln Avenue, thence southerly to m, easterly to n, and northerly to k, making an inclosure which was used as a pasture field. A fence also, as indicated, was constructed by some one other than the defendant northerly along the west side, but within Lincoln Avenue to the point e, about 100 feet south of the right of way, thence westerly to d and northerly to the right of way. Lincoln Avenue, where it meets and enters upon the right of way is 120 feet in width. The ground west of Lincoln Avenue, and south of the right of way to the fence last described at point e, is open and unfenced. A line, however, is drawn to show the west boundary of Lincoln Avenue north of the fence e-d. South of the point e, Lincoln Avenue, owing to the fences as indicated, is but fifty or sixty feet wide.

Plaintiff's horses and cow were pasturing in the inclosure F. The fence where it crossed the triangular block of ground marked G, south of the freight depot, was down at the point X. The horses left the inclosure at that point, entered the right of way at about the point Y, almost south of the freight depot, and were found dead near the track just northeast of the freight depot. The cow was found dead in a pit just north of the freight depot. Just where she left the inclosure, or where she entered the right of way, is not disclosed by the evidence. It is argued by the plaintiff that she left the inclosure where the horses left it, and entered the right of way where they entered it. The defendant argues that the cow may have left the inclosure at or near the point m, where there was a gate frequently standing open, and entered the right of way by traveling north on Lincoln Avenue or she may have left the inclosure at the point X, where the fence was down, and entered the right of way by traveling west along Twenty-Fifth Avenue (Twenty-Fifth Avenue being unfenced on the north, the line showing its north boundary being placed on the drawing merely to indicate the north boundary of Twenty-Fifth Avenue). The most that can be said is that the cow could have entered the right of way by either of those ways. But we shall assume

that the inference drawn by the plaintiff is the more probable, and a finding justifiable that she left the inclosure and entered the right of way as contended for by the plaintiff.

The plaintiff, in the court below, on the record, admitted —and, of course, does so here—that the defendant occupied no more ground than was necessary for depot purposes. She, however claims that, as the statute requires the defendant to fence at all places where its railroad "passes through land owned and improved by private owners," the defendant was required to fence its right of way from c to k, except the space where it was met by Lincoln and Twenty-Fifth Avenues, and was especially required to fence from the point c to h, notwithstanding the ground along such place was used for depot purposes. In this respect she contends that, since the statute itself makes no exception exempting a railroad company from fencing depot grounds, courts should make none. But the authorities do not support the plaintiff in this. To the contrary, the cases very generally hold that notwithstanding a statute, as here, a railroad company nevertheless is not required to fence such grounds at its depots or stations as the necessities or convenience of the public and the proper conduct of the business of the road at such places require to be left open and unobstructed, and that at places where passengers and freight are received and discharged public convenience requires that there should be unobstructed access to the buildings and tracks. In such case the statute of necessity, say the courts, is inapplicable; and hence a railroad company is not liable for stock killed at such places because of a failure to fence. (33 Cyc. 1190; 3 Elliott, Railroads (2 Ed.), sec. 1194; 12 A. & E. Ency. L. 1076, and cases cited.) We do not see anything in respondent's cited cases which makes against this.

The respondent, however, further contends that she was entitled to the judgment of the jury as to whether the right of way at the place in question could be fenced without public inconvenience, and without interfering with or obstructing free access to the depot buildings and grounds. When asked what fence could be placed there without so

interfering, the reply was a fence along the south boundary of the right of way from o to h, covering the particular place where the horses entered the right of way. She, however, concedes that no fence could be placed west or north of the point o without obstructing free access to the freight depot, and to that portion of the depot grounds east of a line extended northerly from point o. The distance from point o to h is about 260 feet. The space at the right of way occupied by Twenty-Fifth and Lincoln Avenues is about 240 feet. From a point where Twenty-Fifth Avenue meets the right of way east to the freight depot is about 160 feet. Now, since it is manifest, and is conceded, that no fence could be placed west or north of point o, of what benefit would a fence be immediately south of the freight depot from point o to h? Neither Twenty-Fifth Avenue on the north nor the triangular block G was fenced. So that the ground occupied by block G and Twenty-Fifth Avenue west of the fence running from point h diagonally across the eastern portion of block G and across Twenty-Fifth Avenue was open and unfenced. Had there been a fence along the right of way from point o to h, stock leaving inclosure F at point X could as readily have entered the right of way by traveling west and entering upon it west of o as did plaintiff's stock by traveling north and entering at Y where there was no fence. A fence from o to h and the north fence inclosing the lumberyard of necessity would cause stock leaving the inclosure at X to wander west over block G and Twenty-Fifth Avenue, which, within about 240 feet, would lead them directly to and upon the right of way where confessedly it could not be fenced. In the next place, the distance between the freighthouse and the south boundary line of the right of way is but thirteen and one-half feet. The evidence shows that a fence from o to h along the south boundary of the right of way, south of the freight depot, would necessarily interfere with free access to the freight depot; the evidence in such respect showing that the freight discharged and received at the freight depot is hauled

by wagon to Garfield, and that some of it requires loading and unloading on the south side of the freight depot.

So, upon the undisputed evidence, we think it clear that the right of way at the place in question could not be fenced without public inconvenience and an interference with free access to the depot buildings and grounds; and hence the defendant was not required to fence its right of way at and along such grounds. And, as plaintiff's case is predicated alone upon a failure to fence, and not upon a negligent operation by the defendant of its trains and cars, we think the court ought to have granted the defendant's motion for a verdict in its favor.

The judgment of the court below is therefore reversed, and the case remanded for a new trial. Costs to appellant.

McCARTY, C. J., and FRICK, J., concur.