## ROBERTS v. SALT LAKE & O. RY. CO.

No. 3245.  Decided Dec. 6, 1918.  (176 Pac. 856.)

1. RAILROADS—DUTY TO FENCE TRACK—QUESTION OF FACT—STATUTE. While courts must declare, as matter of law, that fences cannot be maintained by a railroad company at public road crossings and at stations and depot grounds, whether a certain space is to be left open for station grounds, or for the safety and convenience of trainmen in switching, is ordinarily a question for the jury, Comp. Laws 1907, section 456x, as amended by Laws 1913, c. 74, relating to fencing, being inapplicable.[1]  (Page 35.)

2. RAILROADS—DUTY TO FENCE TRACK—QUESTIONS OF FACT. In action for the killing of a horse which had entered on a railroad company's right of way, because of failure to fence station grounds, whether defendant ought to have erected a fence over an empty space, forming a pocket between the track and an irrigation canal, was for the jury.  (Page 37.)

3. RAILROADS—DUTY TO FENCE STATION GROUNDS—BURDEN OF PROOF. In an action for the killing of a horse straying upon a railroad track, on account of failure to fence station grounds, the burden was on defendant to show the extent of space necessary to be kept open for station purposes.  (Page 37.)

4. TRIAL—INSTRUCTIONS—ABSENCE OF EVIDENCE. In an action against a railroad for killing a horse straying on an unfenced track, an instruction that, in the absence of evidence of negligence, the jury "need not" consider it, was not erroneous, as making it optional with the jury whether to consider it or not.  (Page 38.)

---

[1] Citing Reid v. San Pedro, L. A. & S. L. R. R. Co., 42 Utah, 431, 132 Pac. 253.

5. EVIDENCE—EXPERT TESTIMONY—MATTER IN ISSUE. In an action against a railroad company for killing a horse straying on the track through unfenced station grounds,. expert or opinion evidence, as to the extent of space necessary to leave unfenced, was inadmissible, the question being for the jury.  (Page 38.)

Appeal from the District Court of Weber County, Second District; *Hon. A. W. Agee,* Judge.

Action by Mark O. Roberts against the Salt Lake & Ogden Railway Company.

Judgment for plaintiff. . Defendant appeals.

AFFIRMED.

*Boyd, DeVine, Eccles & Woolley* for appellant.

*R. S. Farnsworth* for respondent.

FRICK, C. J.

The plaintiff recovered judgment against the defendant for the value of a horse which was killed by one of its trains at a point where its railroad passes through cultivated land owned by private persons, and where, plaintiff alleged, the statute required the defendant to construct and maintain fences along its right of way and cattle guards at a certain public railroad crossing, all of which he alleged it failed and neglected to do, by reason of which his horse had entered upon its right of way and railroad track and was killed. The defendant, in answer to the complaint, admitted that it owned and operated the railroad in question; that it had not constructed fences nor cattle guards at the places stated in the complaint; and that one of its cars had collided with and killed plaintiff's horse at the place stated in the complaint. Defendant denied all other allegations. It also averred, as an affirmative defense, that at the places and at the times stated in the complaint the defendant maintained a station

and station grounds which it was necessary to keep open, and which were kept open to afford the necessary ingress and egress to and from said station and grounds to the public for the purpose of delivering and receiving freight, and to accommodate passengers, etc., and that the place where the accident occurred was necessarily kept open for the purposes stated. Upon these issues a trial was had to a jury, resulting in a verdict for the plaintiff for the value of the horse. Judgment was duly entered on the verdict, from which the defendant appeals.

The plaintiff produced no evidence that the defendant was guilty of negligence in killing the horse, and the court withdrew that question from the jury. It will thus be perceived that the questions presented for trial were merely whether the place where the horse entered upon defendant's right of way should have been fenced, and whether it should have maintained a cattle guard at the point where a certain public road intersected the defendant's right of way.

The following rough sketch will aid the readers to a better understanding of the real merits of the controversy:

The two parallel lines marked "R R" represent defendant's double-track railroad. The parallel lines running north

and south marked "P R " on the sketch represent a public
road or highway which crosses defendant's railroad at the
point indicated. The parallel lines to the west of the rail-
road tracks, also marked "P R," indicate a public road en-
tering upon defendant's right of way and station grounds.
The parallel lines marked "C C" represent an irrigation
canal in which water was conveyed to irrigate private lands.
The shaded points marked "B B" between the parallel lines
indicate bridges on the public roads over the canal. The
lands lying both east and west of the railroad tracks were
owned and cultivated by private owners. The line leading
off from the west track in a northwesterly direction marked
"S T" represents a spur track used for loading and unload-
ing freight, and before the road was double-tracked, was
at times used to permit trains to pass each other.
The shaded square marked "P H" represents the power
house which was used by the defendant to provide power
to propel the trains, the railroad being electrically equip-
ped and operated by an overhead trolley system. The
railroad right of way was fenced on the east on both sides of
the public road and along the same. It was also fenced on the
west from the north line of the public road running east and
west, and in a northwesterly direction along the spur track.
The fences also extended along the public roads on the west.
The space marked "V S" was a vacant space between the
railroad track and the canal. There was also a brush fence
along the west bank of the canal to the south. There was,
*however, nothing to prevent live stock from passing* along
the public roads nor from entering the defendant's right of
way and station grounds. All of the open space between the
points marked "E E" on the sketch and to the west of the
railroad tracks is claimed as station grounds by the defend-
ant. The distance between the points "E E" is 827 feet, and
the distance between the point where the spur track deflects
from the main track to the point where the canal passes under
the railroad track is 227 feet. The shaded squares on the
track at the south end of the sketch represent bridges over
the canal which were used as cattle guards to prevent live
stock from passing south on the tracks.

No one, so far as the record discloses, saw the horse killed, but, as we have seen, the defendant admitted that it was killed by one of its cars. The horse was found dead at the point marked "A" between the two tracks.

The plaintiff contended at the trial that the space marked "V S," that is, what we have indicated as vacant space, was not used for station grounds and was not necessary for such a purpose. Upon the other hand, defendant contended at the trial, and here contends, that all the space between the extremes marked "E E" and to the west of the tracks was used for station grounds and for switching and operating its trains. There were no station buildings maintained at the station in question by the defendant. The only building that was maintained was the power house. Trains would stop, however, and receive and discharge passengers, and freight would also be received and delivered while cars would be from time to time loaded and unloaded on the spur track. There was no cattle guard maintained at any point along the right of way on the west side of the track to prevent live stock from entering on the track.

The evidence shows that plaintiff kept his horses in a pasture or corral some little distance from the point where the horse was found dead; that all of the horses on the night in question, except one, in some way got out of the corral; that there were horse tracks on and near the track near the point "A," where the horse was found dead, and that there was some hair and blood on the bridge at that point, and it was assumed that the horse tried to enter onto the right of way and onto the vacant space lying between the tracks and the canal from the public road.

It is not necessary to set forth the evidence in detail. It is sufficient to state that the whole matter respecting the use that was made of the alleged station grounds, and the amount of business that was transacted, and how it was conducted, was all testified to by the several witnesses. It was also made to appear on the part of the defendant how and why it contended that it was necessary to keep open the vacant space and why cattle guards and the fences were not maintained at the points to which we have hereinbefore referred. The

evidence respecting all those contentions was submitted to the jury, and they found the facts in favor of the plaintiff.

Plaintiff contends that the vacant space, left open as it was, was a place of danger and a mere trap for live stock which might depart from the public road, and hence it was defendant's duty to guard against live stock entering upon its tracks from the public road by constructing a cattle guard, and by maintaining a wing fence from the cattle guard to the fence along the public road. The defendant, as before stated, insists that the space was necessary for station grounds, and more especially for the convenience and protection of the trainmen.

We have a statute (Comp. Laws 1907, section 456x, as amended by Laws Utah 1913, p. 117) which requires all railroads to maintain fences along their rights of way where the railroads pass through lands owned and improved by private owners, and to connect the fences at public road crossings with cattle guards. Failure to comply with the statute renders the railroad company liable for all damages that may be sustained by reason of such failure. This court, in common with many other courts, in passing on similar statutes, has held—

"* * * that notwithstanding a statute, as here, a railroad company nevertheless is not required to fence such grounds at its depots or stations as the necessities or convenience of the public and the proper conduct of the business of the road at such places require to be left open and unobstructed, and that at places where passengers and freight are received and discharged public convenience requires that there should be unobstructed access to the buildings and tracks. In such case the statute of necessity, says the courts, is inapplicable; and hence a railroad company is not liable for stock killed at such places because of a failure to fence. 33 Cyc. 1190; 3 Elliott, Railroads (2d Ed.) section 1194; 12 A. & E. Ency. L. 1076, and cases cited." *Reid* v. *San Pedro L. A. & S. L. R. R. Co.*, 42 Utah, 431, 132 Pac. 253.

The authorities supporting the foregoing text are numerous.

In view of the law as we have just stated it to be, counsel for defendant insist that the district court erred in not directing a verdict in favor of their client. While it is true that courts must declare as matter of law that fences cannot be put up and maintained at public road cross-

ings and at stations and depot grounds, yet it is equally true that a controversy with respect to whether a certain space which it is claimed should remain open for station grounds, or for the safety and convenience of the trainmen in switching and in making up trains, etc., is ordinarily a question of fact for a jury to determine.

In 1 R. C. L. p. 1183, the law is stated thus:

"While it is for the court to determine whether or not a railroad shall fence its tracks at a depot or other public place, it is a question of fact for the jury as to whether or not a certain point constitutes a part of the depot grounds, especially where the evidence is conflicting or susceptible of different inferences."

In *Green* v. *Kansas City So. Ry.*, 142 Mo. App. 67, 125 S. W. 865, it was contended, as it is here, that the court erred in refusing to direct a verdict for the defendant for the reason that the locus in quo was used for station grounds. The court, however, held that the question was one of fact for the jury.

The case of *Dorsey* v. *Railroad*, 175 Mo. App. 150, 157 S. W. 1065, is in many respects like the case at bar, in which there was a space of 225 feet beyond the point of a switch where there was no cattle guard to prevent live stock from going on the track south of the switch. In the case at bar, as we have seen, the distance between the point where the spur track deflects from the main track and where the horse was killed is 227 feet. The court in the case just cited held that the question of whether the company should have guarded the track beyond the switch was one of fact for the jury. To the same effect are *Rosenberg* v. *Chicago, B. & Q. R. Co.*, 77 Neb. 663, 110 N. W. 641; *Grosse* v. *Chicago & N. W. Ry. Co.*, 91 Wis. 482, 65 N. W. 185; and *Indiana, B. & W. Ry. Co.* v. *Hale*, 93 Ind. 79. Indeed, we have found no case to the contrary. Counsel for defendant, however, contend that the evidence is without conflict that all of the open ground was necessary for the purposes claimed by them.. In this contention they are in error. While perhaps that may be true respecting the ground lying north of the point where the spur track deflects from the main track, yet with respect to whether that portion which lies south of the switch, and which we have designated as vacant space, is necessary for the purposes

for which it is claimed by defendant, the evidence is conflicting. Moreover, if such were not the case, yet it is very clear that different minds might well draw different conclusions from the facts testified to by the witnesses as to whether that space should remain open or not. In either event therefore, the question was for the jury, and the court committed no error in submitting it to them for determination.

Referring to the sketch, it will be seen that the space south of the switch constitutes a pocket without any outlet to the south or west. The actual space is considerably enlarged in its width on the sketch. It is actually much narrower in fact than there indicated. The jury thus may well have concluded that the defendant had not discharged its full duty in not fencing off the space by constructing a fence at or somewhere near the point indicated by the dotted line running west from the main track on the sketch, and connecting the fence with cattle guards on the tracks to keep live stock from straying thereon and from being caught on the south end of the vacant space, which, as we have seen, constitutes a part of it. This phase of the case was very peculiarly within the province of the jury to pass on.

It is, however, contended that the court erred in charging the jury that the burden of proof was on the defendant to show the extent of space that was necessary to keep open for the purposes claimed by it. In *Pennsylvania Co.* v. *Lindley,* 2 Ind. App. 111, 28 N. E. 106, the rule respecting the burden of proof, in the first headnote, is stated thus:

"In an action against a railroad company for stock killed on its track, the burden is on the company to show that the place where the stock entered upon the track could not be fenced without danger to employees, and where the evidence is conflicting the question of the duty to fence is for the jury."

To the same effect are *Rosenberg* v. *Chicago, B. & Q. R. Co.,* supra, and *Cincinnati, H. & I. R. Co.* v. *Jones,* 111 Ind. 259, 12 N. E. 113.

The court, therefore, correctly reflected the law upon this question in its charge.

It is further insisted that the court erred in its instruction wherein it withdrew the question of negligence for the killing of the horse from the jury. The court, in withdrawing that question from the jury, after stating to them that there was no evidence of negligence on the part of the defendant in killing the horse, concluded the instruction thus: "* * * Therefore the plaintiff cannot recover upon this ground and you need not consider that question." It is insisted that the instruction left the matter optional with the jury whether they would consider that question or not by merely telling them that they "need" not do so. Such a construction, in our opinion, is too narrow. The court, in plain and unambiguous language, told the jury that there was no evidence respecting defendant's negligence. If, therefore, there was no evidence, it followed as a necessary corollary that there was nothing for the jury to pass on, and hence we think that the phrase that they "need not consider that question" can be given but one meaning, namely, that the entire question of negligence was withdrawn from the jury.

Finally, it is contended that the court erred in refusing to permit one of defendant's witnesses to answer an hypothetical question; that is, to state his opinion whether all of the space claimed by the defendant "had not been found too small" for depot and station purposes. No doubt there may be circumstances under which opinion or expert evidence may be proper even in a case of this kind. There, however, is nothing in this case which called for such evidence. The facts were all before the jury, and even the humblest layman could arrive at an intelligent conclusion from the facts with respect to whether the space was too small or whether it was all necessary for the purposes claimed by the defendant. It seems clear to us that in this case expert testimony or opinion evidence was clearly improper, and to that effect are the authorities. *Indiana B. & W. Ry. Co.* v. *Hale,* supra.

The judgment is affirmed; appellant to pay costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.