## EDMUNDS v. SALT LAKE & L. A. RY. CO.

No. 3601.  Decided April 1, 1921.  (196 Pac. 1019.)

1. RAILROADS—FENCING IN CITY REQUIRED UNLESS EXCUSED. A railroad company is not excused from compliance with the requirement of Comp. Laws 1917, § 1253, to fence its property, by the fact that its line at the point in question is within an incorporated city, unless the place is one where it is unreasonable or improper for the road to be fenced because of other uses thereof.[1]

2. RAILROADS—FENCING IN CITY HELD NOT EXCUSED. Evidence that at the place plaintiff's horses were struck by a railroad train the railroad, though within an incorporated city, was not laid

out along a street opened for travel and had not crossed such street within a mile of the place of the accident, does not show that the railroad was excused from fencing its track at that point, though it claimed that its track was laid out under its franchise along a street.

3. RAILROADS—OWNER OF HORSES RUNNING AT LARGE HELD NOT GUILTY OF CONTRIBUTORY NEGLIGENCE. An owner living in the outlying portions of an incorporated city where the streets had not been open for public travel, so that the community was in effect a rural community, does not violate a city ordinance prohibiting stock from running at large upon any street or public place within the city, and his act in turning the horses out to graze is not contributory negligence which prevents recovery for their death on a railroad track which was not fenced.

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown, Judge.*

Action by Wilford L. Edmunds against the Salt Lake & Los Angeles Railway Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for appellant.

*Ray Van Cott,* of Salt Lake City, for respondent.

---

[1] *Reid* v. *San Pedro, L. A. & S. L. R. Co.,* 42 Utah, 431, 132 Pac. 253.

THURMAN, J.

Two of plaintiff's horses were run against and seriously injured by a railroad train operated by defendant on its railroad extending from Salt Lake City to Saltair Beach May 31, 1914. The animals were so seriously injured as to render it necessary to kill them immediately after the collision. The railroad at the place where the accident occurred runs through lands owned and occupied by private owners,

and said lands were more or less cultivated and improved in the near vicinity of the accident. The lands were not fenced on either side of the road. It appears that plaintiff turned the horses out upon his own premises from which they strayed through an open gate onto the railroad where they were struck by the train.

This is an action by plaintiff to recover damages for the injury. The sole ground of negligence relied on is the failure of defendant to construct and maintain a fence on each side of its road. Defendant contends that at the point where the injury occurred its railroad runs upon a public street of Salt Lake City and that defendant had no authority to fence the same. Defendant also charges plaintiff with negligence in permitting his horses to run at large within the limits of the city in violation of a city ordinance.

The question was tried to the court without a jury. Judgment was entered for plaintiff, and defendant appeals.

Comp. Laws Utah 1917, § 1253, requiring railroad companies to fence their roads, states the law as it existed when the accident occurred. As far as material here, the statute reads:

"Every railroad company operating a railroad by steam, electric, gasoline, or any other mechanical motive power within this state, or which hereafter constructs or operates any such road, is hereby required to erect, within one year, and thereafter maintain, a fence on each side of its railroad where the same passes through lands owned and improved by private owners, and connect the same, at all public crossings, with cattle guards."

The court found that the place of the accident was not within a public street of Salt Lake City, nor was said railroad laid, maintained or operated, at the place of the accident, on a public street in said city. This finding of the court is vigorously challenged by defendant.

The evidence offered by defendant in support of the allegation of its answer that its road is operated upon a public street is open to serious question as to its sufficiency. Defendant first introduced its franchise from the city which describes the route in the following terms:

"Commencing at a point in Fourth West street on the north line

of Second South street and running thence north along said Fourth West street to South Temple street, thence west on South Temple street to the city limits."

This evidence was supplemented by the testimony of the general manager of the defendant company, who testified that the road was constructed and maintained along the route set forth in the franchise. This is all the evidence there is in the record on the part of defendant as to whether or not the railroad was constructed and maintained upon a public street.

In view of the statute above quoted, it was the duty of the defendant company to construct and maintain a fence on each side of its railroad unless the case comes within some exception recognized either by statute or judicial interpretation.

The evident purpose of defendant, both in its pleading and in the evidence referred to, was to bring the case within the exception recognized by many authorities to the effect that the obligation to fence does not exist where the road is constructed upon or across a public street within an incorporated city or town. The authorities relied on by appellant are: *Rippe* v. *C., M. & St. P. Ry.*, 42 Minn., 34, 43 N. W. 652, 5 L. R. A. 864; *Meyer* v. *North Mo. R. Co.*, 35 Mo. 352; *Elliott* v. *Hannibal & St. Joe Ry.*, 66 Mo. 683; *Rhea* v. *St. L. & S. F. Ry.*, 84 Mo. 345; *Hurd* v. *Chappell*, 31 Mo. App. 317; *Acord* v. *St. L. & S. W. Ry.*, 113 Mo. App. 84, 87 S. W. 537; *Lee* v. *Brooklyn Heights R. Co.*, 97 App. Div. 111, 89 N. Y. Supp. 652; *Ryan* v. *Northern Pac. Ry. Co.*, 19 Wash. 533, 53 Pac. 824; *Long* v. *Central Iowa Ry. Co.*, 64 Iowa, 696, 21 N. W. 122; *Lathrop* v. *Central Iowa Ry. Co.*, 69 Iowa, 105, 28 N. W. 465; *Louisville, etc., Ry. Co.* v. *Francis*, 58 Ind. 389; *Indianapolis, etc., Ry. Co.* v. *Warner*, 35 Ind. 515; *Giltz* v. *St. Louis, etc., Ry. Co.*, 65 Mo. App. 445; *Rogers* v. *Chic. & N. W.*, 26 Iowa, 558; *International Railroad* v. *Cocke*, 23 A. & E. R. R. Cas. 226; *Blanford* v. *Minneapolis & St. L. Ry.*, 71 Iowa, 310, 32 N. W. 357, 60 Am. Rep. 795.

Assuming that the doctrine stated in those cases is sound, the question is: Does the evidence establish the existence of

a public street within the city at the point where the acci-
dent occurred? The burden of proof as to the existence of
a public street at the point mentioned was upon the defend-
ant. Does the mere recital in a franchise to the effect that
the defendant is authorized to construct its road upon a
certain street establish the existence of a public street? Does
such testimony supplemented by oral testimony to the effect
that the road was constructed as set forth in the franchise
establish the existence of a public street? Can this court take
judicial notice of the fact that South Temple street of Salt
Lake City is a public street extending to the western limits of
the city? If appellant's contention is correct, one or more of
these questions must be answered in the affirmative. .

It does seem to the writer, in view of the fact that the
trial court found against defendant's contention concerning
this question, that the evidence relied on by defendant to
overturn the finding is far from satisfactory. Neither in
the pleading nor in the evidence is it anywhere admitted by
plaintiff that South Temple street is a public street extending
to the western limits of the city. Plaintiff's reply to de-
fendant's answer denies the fact, so that it was clearly in-
cumbent upon defendant to prove it as alleged in the answer.
The street was not shown to be either platted or recorded;
nor was it shown to have been dedicated or laid out as a
public street at any point, much less as far west as the lim-
its of the city. In these circumstances we feel that we could
be abundantly justified sustaining the finding of the trial
court solely because of the failure of defendant's proof re-
specting this particular defense. We prefer, however, to
rest our decision upon broader grounds.

The authorities above cited and relied on by appellant
quite generally sustain the proposition that where a rail-
road runs upon or across a public street within an incorpo-
rated city or town the railroad company is not required to
fence its track, even though the statute requiring it makes
no exception. The exception, however, is made by judicial
interpretation for the simple reason that a fence in such
cases would interfere with public travel and practically

amount to a public nuisance in violation of other statutes within the same jurisdiction. For that reason we find that, perhaps, the great weight of authority is to the effect that such statutes, although unqualified in their terms, do not apply to incorporated cities and towns where the road is laid out upon or across public streets in actual use as such by the public. Some Missouri cases even go so far as to hold that such is the law whether the street is used by the public or not. See the following cases hereinbefore cited: *Meyer* v. *Nor. Mo. R. Co.,* 35 Mo. 352; *Elliott* v. *Hannibal & St. J. Ry. Co.,* 66 Mo. 683; *Rhea* v. *St. L. & S. F. Ry.,* 84 Mo. 345. The doctrine of these cases does not appeal to the court. To say the least, they are not applicable to this jurisdiction where the custom is and has been to include in most instances vast areas of farming land, gardens, orchards, and pastures within the limits of cities and towns.

In *Atchison, Topeka & S. F.* v. *Shaft,* 33 Kan. 521, 6 Pac. 908, the court, in construing a statute similar to ours in principle expressly requiring railroad companies to fence their roads, held:

"A railroad company is not absolved from complying with the express terms of the statute requiring it to inclose its road with a good and lawful fence, except where some paramount interest of the public intervenes, or some paramount obligation or duty to the public rests upon the railroad company, rendering it improper for the company to fence its road."

This appears to be a thoroughly well considered case and cites numerous cases on both sides of the question. It arrives at the conclusion that the doctrine stated in the above quotation is supported by the great weight of judicial opinion. This court recognized the rule in *Reid* v. *San Pedro, L. A. & S. L. R. Co.,* 42 Utah, 431, 132 Pac. 253. That case related to the inclosure of depot grounds, and because of the inconvenience with the free access of the public to the station this court held that the statute requiring a fence did not apply.

In *Ellis* v. *Pacific Railroad Co.,* 48 Mo. 231, it was held that a railroad company is not excused from fencing its right of way through a town or city merely because of its passage through such locality, without reference to the question as

to whether it crosses the public highways therein.

In *Iba* v. *Hannibal & St. Joe Ry. Co.*, 45 Mo. 471, it was held that where the proof showed that the accident occurred within the limits of a town corporation, as shown by a paper plat of the town, but in fact away from any street, the railway company would not be absolved from a duty to fence.

In *Indianapolis, Peru & C. R. Co.* v. *Lindley*, 75 Ind. 426, the court held that where the evidence showed that the stock was killed between two streets of a city on the tracks of defendant's unfenced railroad which might have been fenced without interfering with any street or alley, or the customary operation of the road, the defendant was liable.

In *Toledo* v. *Wabash & Wes. Ry.* v. *Howell*, 38 Ind. 447, the syllabus reflects the opinion of the court and reads:

"A railroad company is not excused from fencing through a large block of ground, not intersected with streets and alleys, simply because the same is within the limits of a city."

In the case last cited the court, at page 451, says:

"There is no reason why such lands not in a city must be fenced that does not apply with equal, if not greater, force when they are within the limits of a city."

In *Indianapolis & C. R. Co.* v. *Parker*, 29 Ind. 471, the court, at page 472, says:

"But we are not aware of any case in which it has been held that it is improper for a railroad company to fence any part of its road within the corporate limits of a city or town, or that the statute does not apply to a case simply because it occurs within such corporate limits. The exception only extends to places where, it is unreasonable or improper that the road should be fenced, whether within or without the corporate limits of cities and towns."

This, we believe, states the principle by which the courts should be guided where the statute itself makes no exception. We think it is the only reasonable and consistent rule that can be adopted in this commonwealth in view of the peculiar conditions to which reference has been made. Applying this rule to the case at bar, we have no hesitancy in arriving at the conclusion that the defendant railroad company has not justified its failure to fence its road at the point where the accident occurred.

The evidence shows that the accident occurred within the

city on defendant's road at a considerable distance west of the Jordan river. In fact, the court found it occurred about a mile west of the Redwood Road which is, itself, some distance west of the river. The evidence tends to show that there is no indication on the ground whatever of a public street along and upon which the railroad is constructed west of the Jordan river. The evidence also strongly tends to show that the railroad crosses no traveled street west of the Redwood Road, or even west of the Jordan river. There is no evidence whatever of travel along or parallel with the railroad of what appellant denominates South Temple street, or upon any cross street, anywhere in the vicinity of the accident.

Unless there is some magic in the term "incorporated city," or something else which would constitute a controlling principle of differentiation in cases of this kind, we see no reason why the section of Salt Lake City west of the Redwood Road should not be subject to the provisions of the      2 statute requiring railroad companies to fence their roads just the same as would be a similar section of territory outside the city limits. There are a few scattered houses here and there with small farms, gardens, orchards, and pasture land, having all indicia of a rural community. Besides all this, as hereinbefore stated, it does not appear that the street in question, or any street of the city, has ever been platted, laid out, or dedicated as a public street west of the Jordan river.

There was no error in the finding complained of.

The city ordinance prohibiting animals from running at large, in part, reads as follows:

"No cattle, horses, mules, sheep, goats or swine shall be allowed to run at large, or be herded, picketed or staked out upon any street, sidewalk, or any public place within the limits of the city, and all such animals so found may be taken up and driven to the stray pound."

Upon this ordinance, and the fact that the plaintiff's horses were on defendant's railroad, defendant predicates a charge of contributory negligence. From what has been said in the preceding pages of this opinion, it is manifest that the

facts of this case do not bring it within the inhibition of the ordinance.

Other alleged errors were assigned but not argued. We find no error in the record.

The judgment of the trial court is affirmed, at appellant's cost.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.