## J. NEBEKER & SON v. LOS ANGELES & S. L. R. CO.

No. 6136.   Decided July 5, 1940.   (100 P. 2d 230.)

*George H. Smith, Robert B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for appellant.

*A. H. Nebeker,* of Salt Lake City, for respondent.

JONES, District Judge.

This is an appeal by the railroad company from a money judgment in a statutory action for the value of certain animals which were killed by a train as the result of the alleged failure of appellant to maintain cattle guards and wing fences on its right of way.

The cause was submitted to the court sitting without a jury on an agreed statement of facts, the pleadings, and certain exhibits; findings of fact and conclusions of law being waived. It was further stipulated that "said pleadings and stipulations and all inferences of fact and conclusions of law which are supported by said pleadings and stipulation and exhibits are to be taken by the court and have the same force and effect as if the facts therein re-

cited and the inferences and conclusions to be drawn therefrom were found by the court and duly incorporated within the findings of fact and conclusions of law."

The rams of respondents entered the right of way from a public crossing through the Stockton station grounds at which point wing fences and cattle guards were not maintained. The animals then moved northerly within said right of way approximately 8,800 feet to the first wing fences and cattle guards in place, at which point they were struck and killed by a train. In addition to the main line tracks, four side tracks were maintained at and near the Stockton depot. One of these tracks paralleled the main line northerly from the station 6,687 feet. South of this point three gravel pit spurs extend a short distance from the main line toward a hill. The station at Bauer which consists of two buildings with no side tracks is situated approximately 700 feet southerly from the place where said animals were struck. Approximately 400 feet north of the point of striking, another side track takes off from the main line and extends northerly. Twenty eight hundred feet north from the point of impact an extended spur track takes off from the main line toward the southwest on a separate right of way. Approximately 4,400 feet north from the place the animals were struck the railroad company maintains a sign which reads "Stockton Yard Limit." The Stockton depot is situated at the northerly limits of a community which has been laid out into blocks and lots. The portion of the right way traversed by the animals prior to being struck (except the depot buildings) cuts through fenced agricultural lands.

Appellant assigns four errors allegedly committed by the trial court but in its printed brief confines the argument to two questions: (1) Wherein did the defendant (appellant) fail to comply with the provisions of the statute? And (2) does the evidence show that there was any failure on the part of defendant to comply with the statute? The discussion will accordingly be limited to these propositions.

Back in 1901 there was enacted a statute which is now known as Sec. 77-0-13, R. S. U. 1933, under which railroads were required to fence their rights of way under certain circumstances, "and at all public road crossings shall connect the same with cattle guards  *  *  *  and ■ every railroad company shall be liable for all damages sustained by the owner of any domestic animal killed or injured by such railroad in consequence of the failure to build or maintain such fence." But in construing the act this court has held the same inapplicable as to railroad station grounds. *Reid* v. *San Pedro, L. A. & S. L. R. Co.*, 42 Utah 431, 132 P. 253; *Edwards* v. *Salt Lake & U. R. Co.*, 70 Utah 496, 261 P. 445; *Roberts* v. *Salt Lake & O. R. Co.*, 53 Utah 30, 176 P. 856, 858.

In *Roberts* v. *Salt Lake & O. R. Co.*, supra, it was further held:

"* * * while it is true that courts must declare as matter of law that fences cannot be put up and maintained at public road crossings [the writer feels that the next word should have been omitted] and at stations and depot grounds, yet it is equally true that a controversy with respect to whether a certain space which it is claimed should remain open for station grounds, or for the safety and convenience of the trainmen in switching and in making up trains, etc., is ordinarily a question of fact for a jury to determine."

In that case this court upheld an instruction to the jury given by the trial court to the effect that the burden of proving the necessity for not complying with the statute* as to any particular place along the right of way was on the railroad company.

Before proceeding further it must be borne in mind that while the action is statutory in nature yet, that only legal issues, as distinguished from equitable, were raised by the pleadings. Therefore, this action must be ■ classified as essentially one at law. See 1 C. J. S., Actions, § 1, p. 943,; Id., § 54, p. 1158, note 41; Id., § 55, p. 1170.

Under the provisions of our State Constitution, Article VIII, Sec. 9, and a long line of decisions of this court, this being a law action, the judgment stands before us in the same position as if the cause had been tried to a jury and a verdict returned, or, findings made in an action tried to the court. *I. X. L. Stores Co.* v. *Moon,* 49 Utah 262, 162 P. 622; *Jensen* v. *Howell,* 75 Utah 64, 282 P. 1034; *Eureka Hill Mining Co.* v. *Bullion Beck & Champion Mining Co. et al.,* 32 Utah 236, 90 P. 157, 125 Am. St. Rep. 835; *Hatch et al.* v. *Gorlinski et al.,* 31 Utah 446, 88 P. 406; *Whittaker* v. *Ferguson,* 16 Utah 240, 51 P. 980, 981; *Belleville Pump & Skein Works* v. *Samuelson et al.,* 16 Utah 234, 52 P. 282; *McCarrick* v. *Lenox Mining Co.,* 49 Utah 353, 164 P. 478.

Reverting then to the argument presented it becomes apparent that had this action been tried in the ordinary manner the trial court would have been confronted with the question of fact as to just what extent the railroad company was to be excused from not complying with the statute by reason of the maintenance of its station grounds and switching facilities. Or, to state it another way, at just what point northerly from the Stockton depot should a wing fence and cattle guards have been erected by the carrier in order to comply with the statute as interpreted by this court? There is no express stipulation of fact covering this proposition and the trial court might well have made a finding on this subject as a deduction of ultimate fact based on the evidentiary matter stipulated to. 2 Bancroft's Code Practice 2089. But this question is not before us because the stipulation went further and provided that all inferences to be drawn from the facts were to be deemed made by the trial court.

A careful examination of the pleadings, stipulation, and exhibits convinces us that there was sufficient evidence before the trial court to justify a deduction of fact that the

failure of appellant to comply with the statute by not erecting and maintaining on its right of way a wing fence and cattle guard at some point between the depots of Stockton and Bauer was the cause of the injury sustained. And said conclusion of fact can be classified as supported by substantial evidence.

It therefore appearing that there are sufficient facts, or inferences based on facts, in the record before us to support the judgment, the same should be, and is, affirmed. Costs to respondents.

LARSON, J., concurs.

WOLFE, Justice (concurring).

I concur. But the matter is not without doubt. Sec. 77-0-13, R. S. U. 1933, requires a fence on each side of a railroad right of way when "the same passes *through* lands *owned and improved by private owners.*" (Italics added.) Assuming that this applies to right of ways through towns whose plats and lots have been laid out in reference to the right of way, the statute, literally construed, would require fences even on the edges of depot areas, or what might be termed the town railroad messuage. But by judicial decision, on account of practical considerations, we have construed the statute not to intend fences along depot areas or at public crossings where the public crossings and the depot areas are contiguous. But also by judicial construction we seem to have held that this is a recession from the literal terms of the statute only to the extent that the railroad is permitted to move the cattle guard and wing fences which should otherwise be at the boundary of the highway back only so far as need be for convenience and not necessarily to the next crossing, which might be ten miles away. In other words, the judicial concession was one which permitted a recession from the place where by the terms of the statute, wing fences and a cattle guard should be placed, but did not sanction a total omission of them. I think that the statement in

the pleadings "that there was and is no cattle guard north of said public highway until a point is reached on said right of way of approximately a mile and a half north of said public highway" opens up the issue as to whether that was the closest point to the highway in Stockton at which the cattle guard and wing fences should be placed under the principle of our Utah decisions.

True it is that the argument could be made that such requirement would simply have formed a cul-de-sac further south than it actually was, and that these fences and cattle guards at public highways are not to prevent stock from traversing the right of way after they get into it without fault of the railroad but to keep them from getting in, and that as to the latter duty the railroad has fully performed. But it is quite probable that where stock does penetrate into a right of way through an unguarded but rightful opening at the station messuage, transverse wing fences and a cattle guard as close as possible to the limits of that messuage would keep them at a place where they might more easily be discovered and timely removed.

On the basis of these considerations I think we must affirm, because the trial court could, from the stipulation, have determined that the railroad had omitted to place wing fences and a cattle guard at a more southerly point than it did, although no definite place was assigned by plaintiff where they should have been placed. This argument gains strength from the case of *Roberts* v. *Salt Lake & Ogden Railway Co.*, 53 Utah 30, 176 P. 856, where it was held that the burden of proof was on the railroad company to show that the place where the stock entered could not be fenced without inconvenience. I hardly think it is judicially adding a duty to say that a fence and guard should be placed at the nearest possible point beyond that part of the right of way which, under our decisions, could legally remain unfenced, because the concession to the railroads as to that tolerance was also judicial. This ruling, therefore, is a judicial re-

finement of what was, in effect, a former judicial dispensation from the literalness of the statute, albeit such dispensation was dictated by practical considerations.

MOFFAT, Chief Justice (dissenting).

I dissent. Under the statute as heretofore construed by this court, in cases cited in the prevailing opinion, plaintiff must plead and prove a violation of the statute on the part of defendant. It having been determined that the statute requiring wing fences was inapplicable as to railroad station grounds, to hold that the railroad company must construct and maintain a wing fence somewhere beyond the railroad station grounds and intervening between such grounds and the next crossing is not required by the statute. There is nothing in the record to justify this court in ruling that wing fences be established somewhere between the railroad station grounds and the next crossing where a wing fence is required to be established. In the instant case, it is shown the wing fence was constructed at the next railroad crossing.

PRATT, Justice (dissenting).

I dissent. The action is purely statutory. Plaintiffs must plead and prove a violation of the statute on part of the defendant. They pleaded a failure to place cattle guards at the crossing stipulated to be within the station yards. Under the law of this state, that is not a violation of the statute. Thus, such failure is not available to plaintiffs as a basis for the cause of action. Such a conclusion leaves the pleadings and stipulation (proof) silent as to the point at which cattle guards should have been placed and were not. The burden was upon the shoulders of plaintiffs to show that place. Their cause of action and proof must be definite and certain as to a violation.

McDONOUGH, Justice, being disqualified, did not participate herein.